LOUIS BLITZ, SURVIVOR, ETC. v. THE UNION STEAMBOAT COMPANY.

*Contract for transportation—Overcharges.*

A contract must be construed as reasonably as its terms will allow; and where it permits an option, it is not to be supposed that the option can be arbitrarily exercised to the disadvantage of the other party.

Where a contract for the transportation of goods gives the carrier an option between modes of transportation, the option must be exercised with a view to the interest of the opposite party; and it is a breach of the contract to exercise it to his disadvantage unless it is done in good faith and under circumstances which seem to require it.

Assumpsit as for money overcharged will not lie where the contract on which it was paid was fully performed according to its terms, but was practically broken by the arbitrary exercise of an option permitted therein, to the disadvantage of the plaintiff; the remedy should be in an action for damages.

In an action for damages on a contract for the carriage of goods by steamer, the usual course of business in such transportation must be considered.

Error to Wayne. (Speed, J.) October 5.—October 24.

ASSUMPSIT. Plaintiff brings error. Affirmed.

*Fraser & Gates* for appellant.

*Moore, Canfield & Warner* for appellee.

COOLEY, J. Assumpsit to recover a sum of money equal

to eight cents per hundred pounds, paid under protest, as freight, for the carriage of a large amount of soda-ash from New York to Detroit.

The facts out of which the action arose are the following: The defendant, in August, 1879, was engaged in the business of transporting property between New York and the West, and owned and employed several steamers on Lake Erie and the other lakes. Some of these boats only ran between Buffalo and Detroit; others formed a Lake Superior line. On August 15, 1879, the firm of Israel Blitz & Son, of whom plaintiff is survivor, contracted with defendant for the transportation of a quantity of soda-ash from New York to Detroit, and received from defendant the following bill of lading:

"THE UNION STEAMBOAT COMPANY.
(*Canal Line.*)
VIA HUDSON RIVER & ERIE CANAL TO BUFFALO, AND THENCE VIA THE STEAMERS OF THE COMPANY TO LAKE PORTS.
*Office, No. 120 Front Street.*

Received, New York, *August* 15, 1879, from *Wing & Evans,* the following described property in apparent good order (contents, and condition of contents, unknown), on boat *Mary,* viz.:

*Ninety-five (95) Cks. SODA-ASH.*

Marks and address for delivery:

*A. A. 60 Cks.        A. B. 35 Cks. for*
ISRAEL BLITZ & SON,
*Detroit,*
*Mich.*

Which the UNION STEAMBOAT COMPANY (Canal line) agree to forward by its own or other means of transportation, subject to all the conditions herein contained, to *Detroit,* there to be delivered upon payment of freight at the following rates, viz.: If fourth-class, at 20 cents per 100 lbs. According to the current west-bound classification, and by the trunk lines and rates, subject to classification of railroads west of lake ports."

Then followed certain conditions, among which was the following:

"Changes may be made in, and parts of the property

may be carried or forwarded by different means or routes of transportation. All property which, from its bulk or kind, is usually carried on open cars, may be so carried."

The bill of lading was properly signed.

Freights from New York to Detroit by sail on the lake, at this time, were twelve cents per hundred pounds for fourth-class goods. The consignees were anxious to receive the soda-ash as speedily as possible, and chose transportation by steamers, at the higher rate, in the expectation of a more expeditious delivery.

The goods did not reach Buffalo until August 29, which was several days later than was expected. Then, instead of being forwarded by steamer, they were put aboard a sailing vessel, which landed them in Detroit, September 3d. The consignees declined to pay freight beyond what it would have cost them to procure transportation by sail when the contract was made, namely, twelve cents per hundred pounds; but the agent of defendant refused to receive less than the rate specified in the bill of lading, and retained the goods until payment was made. This was done under protest, September 5th, and this suit afterwards instituted. In the circuit court defendant had judgment.

It is contended on behalf of defendant that under the bill of lading the shipment by sail was rightful; the option of choosing other means of transportation than by steam having been expressly given. It is true that an option was given, but we do not think it was one which might be exercised arbitrarily, and without regard to the circumstances. Every contract must have such reasonable construction as its terms will admit of; and nothing could well be farther from reasonable than a construction which would give to the carrier any such arbitrary option, if the terms of the contract will allow of any other, as we think they will.

The shippers bargained for the more desirable transportation, and agreed to pay for it a much higher rate than would have been charged for the other. To suppose, notwithstanding this, that they understood and intended to agree that the carrier might, at discretion, send by the less desir-

able mode, and still charge the higher rate, is as unreasonable as to suppose that a debtor would deliberately contract that his creditor might, at option, within certain limits, determine at pleasure how large or how small the debt should be. The one, in fact, would be substantially the same thing as the other; and the validity of an agreement to that effect would be more than questionable.

But there would be nothing either unreasonable or unbusiness-like in a contract, which, while providing for the more desirable carriage, should leave the carrier at liberty to adopt some other mode if unforeseen contingencies should seem to justify it, having regard to the interests of both parties; and it may readily be inferred that such contingencies will often arise in the transportation of goods from New York to Detroit, whatever mode of carriage is primarily selected. There would be nothing unjust, therefore, in upholding such a stipulation whenever it was shown to have been acted upon fairly and in good faith.

Such, we think, was the intent of the contract in this case. The carrier undertook to transport the goods by steam on the lake; but, to provide for contingencies, stipulated for the privilege of sending by other means of transportation when it should be reasonable to do so. But when he exercised that privilege he ought to show sufficient of the circumstances to make it apparent that it was not unreasonable he should do so, and that the contingency arose which he acted upon in good faith in deciding upon the change. There was scarcely any attempt at such a showing in this case; and therefore we agree with the plaintiff that apparently there has been a breach of the contract.

But the plaintiff does not count upon a breach of the contract: what he claims is that the defendant, having performed the contract in a mode not allowable, was en titled to demand only the compensation at which performance in that mode could have been bargained for when the contract was entered into, and that whatever more has been exacted has been taken without right. But it is clear that no action can be maintained on this theory. The

rights of the parties must be determined by the contract they made, and not by one they might have made but decided not to. The contract actually entered into stipulated that for the carriage of the goods the price exacted by defendant should be paid; and as they have been carried and received, the payment of the stipulated price, cannot be said, either in whole or in part, to have been an exaction which was without consideration. The plaintiff may, nevertheless, be entitled to damages if performance was not as agreed; and while these damages might equal, or even exceed, the difference between the cost of transportation by steam and by sail, so also they might fall greatly below that difference.

But the plaintiff has not brought suit for damages, and therefore is not entitled to any recovery in this case. As there has been a full argument, however, we deem it not improper to remark that, so far as the facts are disclosed by this record, no damages appear. Damage might have come from loss of the goods, or from injury in carriage, or from delay: if none of these consequences followed, it was of no importance to the plaintiff that the goods were not sent by steamer as he intended. There is no allegation of loss or injury to the goods, and there is no showing that they were not delivered in Detroit by sail as early as delivery by steam would have been practicable. In sending by steam the usual course of business must be considered: the boats may have their regular times of leaving port, or the course may be to leave when a reasonable cargo can be had: it is not likely it was the course of business that they should go at irregular times without reasonable loading. But, whatever was the course of business, the plaintiff has not shown that if defendant had taken the first opportunity to send by steam, the goods would have been likely to reach Detroit earlier than they were actually received. He has, therefore, failed to show that he was damnified.

The judgment must be affirmed with costs.

The other Justices concurred.