THE AMERICAN SUGAR REFINING COMPANY *v.* MCGHEE *et al.*, receivers.

1. Where goods were shipped over the lines of connecting railways to a consignee designated in the bill of lading, and on arrival at destination the receivers of the railway company which completed the transportation tendered delivery to that consignee, and he declined to receive the goods, the liability of the receivers as common carriers thereupon ceased and they became liable as warehousemen only, and as such were chargeable with the duty of notifying the consignor of the consignee's refusal to accept the goods, and with the further duty of holding the same subject to the order of the consignor.

2. The action being by the consignor against the receivers to recover the goods, or their value, and the only defense set up and relied upon by the defendants being, in substance, that they had delivered the goods as directed by a broker of the plaintiff, and that he was the duly authorized agent of the plaintiff to direct such delivery, and there being no sufficient evidence to warrant a finding that he was, in fact, such an agent of the plaintiff, the judge below, who tried the case without a jury, erred in adjudging that the defendants were not liable.　The broker, under his general powers as such, had no authority either to receive the goods or to direct to whom they should be delivered, nor could such authority be conferred upon him, so as to bind his principal, the consignor, by any local custom or usage, the latter having no knowledge thereof,

and consequently not contracting with reference thereto in making the shipment.

March 11, 1895.    Argued at the last term.

Complaint for damages. Before Judge Ross. City court of Macon. June term, 1894.

JORDAN & ELLIS and S. A. REID, for plaintiff.

HILL, HARRIS & BIRCH, for defendants.

LUMPKIN, Justice.

The American Sugar Refining Company brought an action against the receivers of the E. T., V. & Ga. Railway Company for the recovery of one hundred barrels of sugar, or the value of the same. The material allegations of the declaration are as follows:

On January 24th, 1893, the plaintiff delivered the sugar to the N. O. & N. E. Railroad Company, to be transported over its line to its terminus, and thence over the line of the E. T., V. & Ga. railway, of which the defendants were in charge as receivers, to Macon, Ga., the shipment having been made under a bill of lading by the terms of which the sugar was consigned to Rogers, Jones & Moore, of the city last named; and the defendants received the sugar for transportation and delivery under that bill of lading. The plaintiff was really the owner of the sugar when the defendants received it, the shipment having been made upon a fraudulent order given by a broker without authority from the consignees, who did not order nor buy the sugar, nor consent to its shipment to them, and who disclaimed any right or title to or interest in it, and refused to receive it, which facts were not known to the plaintiff till afterwards. It was the duty of the defendants, upon the refusal of the consignees to receive the goods, to notify the plaintiff of this fact and redeliver to it, or to its order. The defendants failed to observe this duty, but on the contrary, converted and appropriated the sugar to their own use as receivers, to the plaintiff's dam-

age in the sum of $1,640.35, which was the value of the consignment.

In order that the nature of the defense may be clearly understood, we will now set forth in full those portions of the defendants' pleas upon which they relied. They are as follows:

"And for further answer in this behalf, these defendants show that the way-bills for shipping directions which accompanied the freight in question required these defendants to turn over and deliver said goods to Rogers, Jones & Moore, of the city of Macon; that upon the receipt of said goods in the warehouse of the East Tennessee, Virginia and Georgia Railway Company at Macon, Ga., these defendants, through their agent at said point, tendered the said goods to the consignees, Rogers, Jones & Moore, as by the shipping directions required to do; that immediately said Rogers, Jones & Moore declined to receive said goods, alleging that they were not willing to receive the same, and directing the agent of these defendants to consult with John Farrar, agent or broker of the plaintiffs in this city; that thereupon the said agent notified the said John Farrar, broker, as aforesaid, upon whose order the said goods had been purchased, that the goods were ready to be delivered and that Rogers, Jones & Moore, the consignees, declined to receive the goods and had directed these defendants to consult with him. Thereupon the said John Farrar immediately directed these defendants to deliver the goods to H. D. Adams & Co., a responsible firm of this city; that pursuant to such instruction, and having often been instructed before in similar cases by the said John Farrar, these defendants, through their agents, delivered over the goods to the said H. D. Adams & Co. for the account of the plaintiffs, as directed by the plaintiffs' broker so to do. These defendants, having notified the consignors through their agent, as aforesaid, and having been by him directed as to the disposition of the goods, followed his instructions to the letter and delivered them over to the persons designated by the said broker. Wherefore these defendants show that they have fully discharged their duty in and about said matter, and that there is no liability upon them to ac-

count for any matter or thing connected with the subsequent disposition of said merchandise.

"And for further answer in this behalf, these defendants show that they were cognizant, from a long course of dealing through their agents at Macon, of the fact that said Macon Brokerage Company, or John Farrar & Company, or both, of which John Farrar was one of the partners, or principal agent, had been for a long time the agent of the plaintiffs in placing their orders and the sale of products of the plaintiffs in this city; that when the said Rogers, Jones & Moore, the consignees of said goods, refused to receive them and directed the defendants to consult with the said John Farrar, as a member of the said Macon Brokerage Company or John Farrar & Company, these defendants immediately did so in accordance with the custom that had heretofore prevailed with reference to similar shipments; and the said John Farrar, for the said Macon Brokerage Company or John Farrar & Company, having directed these defendants to turn over the said goods to H. D. Adams & Co., a responsible firm, fully solvent and fully able to pay for the same, these defendants obeyed such instructions. The said John Farrar had been placing orders for the consignors for a long series of years, and was known to this defendant as the agent and broker of the said plaintiffs in this city. He had authority, both by custom and by direct mandate from the plaintiffs, to place their orders in this city, and these defendants only followed the instructions that they received from him in this case, as it was known to them, from his course of dealing, that he was the authorized agent of the plaintiffs to direct the disposition of the goods, as well as to procure and place orders therefor. These defendants delivered the goods to the parties to whom they were consigned; those parties having refused the goods, and having directed these defendants to consult with John Farrar, as aforesaid, the goods were delivered to H. D. Adams & Co. on instructions from him as broker of the said plaintiffs."

The case, by consent, was tried by the judge without a jury. The evidence, as a whole, showed substantially the following state of facts:

John Farrar, or the Macon Brokerage Company,

under different firm names,—John Farrar, however, always being a member,—did business for the plaintiff as its broker in the city of Macon from 1890 until, and including, the month of January, 1893. During this period, Farrar, or the firms of which he was a member, sent large numbers of orders to the plaintiff, at the instance of various parties. He had, however, no authority to make sales for the plaintiff, but only to submit orders for its acceptance or refusal, receiving commissions on sales completed; and in no instance was he authorized to make collections for the plaintiff, but purchasers remitted to it directly. He was not authorized to dispose of any goods for the plaintiff without instructions from it, and in the present case he was not authorized to take possession of or dispose of the sugar, or give any directions as to its delivery. The plaintiff gave him no instructions whatever concerning it.

The shipment of the sugar was brought about as follows: Farrar, for a fraudulent purpose of his own, and without authority from Rogers, Jones & Moore, sent an order to the plaintiff to ship to them one hundred barrels of sugar, and it did so, believing that the order was an honest one and duly authorized. Farrar informed Rogers, Jones & Moore of the sending of the order, but represented that it resulted from a mistake caused by his using the wrong cipher, and requested them to notify him of the arrival of the sugar. When it did arrive, the agent of the defendants notified Rogers, Jones & Moore of the fact, and tendered delivery to them, the agent being at the time entirely ignorant of the fraud which had been practiced by Farrar. Rogers, Jones & Moore informed the agent that the sugar was not for them, and declined to receive it, but stated that Farrar would dispose of it. They also, as the latter had requested, informed him of the arrival of the sugar, and mailed to him, without indorsement, the bill of lading

which had been sent to them. He, without informing the plaintiff of the rejection of the consignment by Rogers, Jones & Moore, and without presenting to the agent of the defendants the bill of lading, simply telephoned the agent to deliver the sugar to H. D. Adams & Co.; and the agent, without having notified the plaintiff of the refusal of Rogers, Jones & Moore to receive the sugar, and without having asked of the plaintiff any directions in the matter, and also without requiring from Farrar the production of the bill of lading, delivered the sugar as he had directed to H. D. Adams & Co., a responsible firm, who afterwards paid Farrar for the same. He absconded without paying anything to the plaintiff, which, however, never expected nor demanded payment from him. Goods were very frequently delivered without requiring the bill of lading to be surrendered. When the plaintiff had become informed of the rejection of the consignment by Rogers, Jones & Moore, it made a demand upon the defendants' agent for the sugar, and in reply to this demand the attorneys of the defendants wrote the following letter, addressed to the plaintiff's attorney:

"Your demands have been referred to us. In reply to yours, we beg to state that the goods in question were delivered to Messrs. H. D. Adams & Company by direction of the Macon Brokerage Company, through Mr. Farrar, of this place. This delivery was made on or about February 1st, 1893. The Macon Brokerage Company claim to be acting for your client, and it was known to this company that they had been representing them in other similar transactions, and this sugar was shipped on the order of said brokerage company.

There had been previously frequent dealings between the agent of the defendants and Farrar in his capacity as broker. He often hurried up deliveries, and also gave directions about placing cars for consignees, and his instructions were carried out; but in every instance ex-

cept the present, his directions related to deliveries to the proper consignees. This was the first time when the defendants' agent "had to change the consignee." The value of the sugar was proved. There was also a considerable amount of evidence as to certain alleged customs in the city of Macon.

It was shown that, according to the usage of trade recognized by the wholesale dealers of that city, when a merchant, for any reason, rejected a consignment shipped to him upon the order of a broker, it was customary to notify the broker of such rejection, without also communicating the fact to his principal, leaving the broker to arrange for the final disposal of the shipment. Upon such notification to the broker, it was his duty to communicate with his principal and get instructions as to how the goods rejected should be disposed of. The broker had no power to assume possession of the goods, to make a resale of them, or to give any direction as to their delivery, save upon receiving express authority from his principal; but the railroad agents usually respected the broker's orders as to final delivery of the goods, when the broker was known to be representing the consignor and had given the order upon which the goods were shipped, without requiring him, it would seem, to exhibit any evidence of authority from his principal to accept the consignment in the principal's behalf, or to direct delivery to a person other than the original consignee named in the bill of lading. It did not, however, appear that a delivery of this kind had ever been made to Farrar, acting as the broker of the plaintiff, or of any other principal he was known to represent.

It was further shown that it was against the rules of the sugar refining company to give the discount allowed on orders for one hundred barrels of sugar, unless the whole of that amount was taken by a single firm or

person. It was customary, however, through the contrivance of Farrar, for the merchants of Macon to evade this rule by several of them combining together, giving an order in the name of one only of them, and directing shipment accordingly. When the sugar arrived, Farrar would carry out the scheme by going around, in behalf of the nominal consignee, to all the other merchants interested, taking the check of each for his proportion of the price, and giving him an order on the railroad for the amount of sugar to which, under the arrangement, he was entitled. Farrar would then deliver the checks thus collected to the merchant in whose name the shipment was made, who thereupon would send to the sugar company his individual check for the price of the entire consignment. The bill of lading would be turned over to Farrar, who, upon surrendering it to the railroad company, would thus be enabled to get possession of the consignment, and direct its distribution upon his written orders to the several parties interested therein. It was not shown that the plaintiff had any knowledge at all of the customs prevailing in Macon—whatever they were, or dealt with reference to the same.

The judge rendered a judgment in favor of the defendants, and the plaintiff made a motion for a new trial, to the overruling of which it excepted.

1. We think that, under the facts stated, the receivers of the railway company had a perfect right to treat the consignment exactly as if Rogers, Jones & Moore had actually ordered the sugar. They were the consignees designated in the bill of lading, and the defendants' agent did precisely the proper thing in tendering delivery to them. This being so, when these consignees declined to take the goods, the liability of the defendants as carriers ceased, and they became liable as warehousemen only. As such, it was their duty to notify the consignor of the consignees' refusal, and also to

hold the goods subject to the consignor's order. Of course an order for the delivery of the sugar from an agent of the consignor having authority to give it would be the legal equivalent of such an order from the consignor itself. We shall assume that the propositions announced in this division of this opinion will be accepted as sound and correct, without stopping to elaborate or discuss them.

2. The case was earnestly argued in this court by counsel for the defendants in error, upon the line that the conduct of Rogers, Jones & Moore amounted to such a *quasi* acceptance of the consignment as would justify a delivery to another upon their order or direction. It was strenuously insisted that, by referring the defendants' agent to Farrar, the consignees made him *their agent* to give direction as to the delivery of the sugar, and that consequently his order to deliver the same to H. D. Adams & Co. was the act of Rogers, Jones & Moore, and a disposition of the sugar, so far as the defendants were concerned, *by the consignees themselves.* Impressed by the earnestness and zeal of the counsel, we most carefully examined the record to ascertain if it contained anything upon which a defense of the nature just indicated could be rested; but we were unable to find any support for such a defense, either in the pleadings or in the evidence.

As will have been seen, the defendants' pleas repeatedly state that Rogers, Jones & Moore refused to receive the goods, the expression used in one instance being that they "declined to receive the goods, alleging that they were not willing to receive the same." The pleas also distinctly set up that the defendants gave notice of this refusal to the consignor, through Farrar as *its* agent; that he *was* its authorized agent to direct the disposition of the goods, and that delivery was made in accordance with his instructions, *as the consignor's broker.* The pre-

vious dealings between the defendants and Farrar, and
the customs prevailing in Macon, were alleged in sup-
port of the proposition that he was the general agent of
the sugar refining company, and, as such, entitled to
direct what should be done with its goods.    The above
quoted letter written by the defendants' attorneys, shows
that the defendants' claim from the very beginning was
that the delivery to H. D. Adams & Co. was made on
the order of the brokerage company, representing the
sugar refining company; and contains not even a hint
that delivery was made upon any authority or direction
given by Rogers, Jones & Moore, as consignees.    It is
true there is an expression in one of the pleas that the
defendants "delivered the goods to the parties to whom
they were consigned"; but this cannot be taken as
meaning literally what it says.    This expression is im-
mediately followed by a recital that these parties refused
the goods; and there can be no possible doubt, from the
pleas as a whole and from the evidence, that the defend-
ants never seriously claimed that there had been a deliv-
ery to Rogers, Jones & Moore, the consignees, but only
that delivery was tendered to them, and they thereupon
directed that Farrar be consulted, with the additional
statement that he would dispose of the goods.    So the
real defense in this case was, that delivery was made on
Farrar's order; that he was the plaintiff's agent, duly
authorized to give the order; and that consequently
the delivery so made was a full and complete legal pro-
tection to the defendants against the plaintiff's demand.

In testing the merits of this defense, we will first in-
quire whether or not the mere fact that Farrar was the
broker of the plaintiff authorized him to direct a deliv-
ery of the sugar, after the refusal of Rogers, Jones &
Moore to accept it, so as to make such delivery binding
upon the plaintiff.    The powers of Farrar as the plain-
tiff's broker were clearly and distinctly shown by the

evidence, from which it appears that he was simply a merchandise broker, with limited authority and having no special or express power to do anything beyond such acts as brokers of this kind could usually do in the conduct of their business. He was a mere middleman to negotiate sales by submitting offers to his principal. He had not even the right to make a binding contract of sale in its behalf, and it is absolutely certain that he had no authority to order any disposition of its goods other than to see that they were delivered to customers who had actually purchased them. Some confusion has arisen by using the word "broker" in cases where the person referred to was really a factor. Mr. Justice Bradley, in Slack v. Tucker & Co., 90 U. S. 330, says: "The difference between a factor or commission merchant and a broker is stated by all the books to be this: a factor may buy and sell in his own name, and he has the goods in his possession; while a broker, as such, cannot ordinarily buy or sell in his own name, and has no possession of the goods sold"; citing, in a foot-note, Story on Sales, §91; Story on Agency, §34; 2 Kent, 622. In Story on Agency, §28, it is said: "The true definition of a broker seems to be, that he is an agent employed to make bargains and contracts between other persons in matters of trade," etc.; and that "he is strictly, therefore, a middleman or intermediate negotiator between the parties." In the section of this work cited by Mr. Justice Bradley, it is stated that while a factor is entrusted with the possession, management, control and disposal of the goods to be bought or sold, a broker usually has no such possession, management, control or disposal of the same. Again, in Tiedeman on Sales, §272, it is said that a broker is not authorized to receive payment for goods sold by him, and that he has no implied authority to rescind a sale, and, without express authority, cannot appoint subagents and turn the business over to them.

In Ewell's Evans on Agency, *4, we find a quotation from Chief Justice Abbott, in the well-known case of Baring v. Corrie, 2 B. & Ald. 143, in which the distinction between a broker and a factor is clearly pointed out; and it is there stated that a broker is not trusted with the possession of goods, the sale of which is effected through his agency. The same distinction is stated in Mechem on Agency, §13, and the author adds that the broker does not ordinarily have the possession of the property which he may be employed to sell, and that his contracts are always made in the name of his employer.

After an examination of numerous authorities, including those above cited, this court, in the case of *Kelly & Bro.* v. *Kauffman Milling Co.*, 92 *Ga.* 105, reached the conclusion that the authority of a merchandise broker, under his general powers as such, was quite limited, and that he had no authority to rescind a contract of sale, receive from the purchaser of goods the bill of lading indorsed by him, and thus obtain possession of the goods from the carrier, or cause their delivery to a stranger to whom he had transferred the bill of lading. That case, in effect, rules that such a broker as Farrar had no right or power, under the facts disclosed by the record in the present case, to bind the sugar refining company by an order to the defendants for the delivery of the sugar to H. D. Adams & Co., after its rejection by Rogers, Jones & Moore.

The only remaining question is whether or not, under the local customs or usages prevailing in the city of Macon, Farrar had authority either to receive the goods himself, or to direct to whom they should be delivered, so as to bind his principal. The truth is, it would be a strain to hold that, under the evidence submitted, there was in Macon any custom from which any such authority on the part of Farrar could be derived, even if the plaintiff knew and was bound by the customs of trade

in that city; but it was not pretended that it had any knowledge whatever of any local custom or usage prevailing in Macon, or that it made contracts with reference thereto in selling goods in that market.   We think it would be exceedingly unjust to hold the plaintiff bound by any custom in the city of Macon of which it was totally ignorant.   Customs are *quasi* laws which have no extraterritorial operation.   A custom prevailing in Macon would not, *proprio vigore*, have any force in Atlanta, much less in New Orleans.   This being so, no one is bound to take notice of a special custom, as he would be of a general rule of law.   Therefore, actual knowledge of the existence and observance of a mere local custom is necessary to charge one who does not come directly within the scope of its operation.   A merchant in New Orleans could not be presumed to know the customs of Macon; and it not being his duty to take notice of the same, he cannot be held to have impliedly contracted with reference to such customs, unless it is affirmatively shown that he had actual knowledge of the same.   The *Kauffman* case, *supra*, is also in point upon the particular question with which we are now dealing.   It appeared in that case, that an effort was made to enlarge the authority of the broker under the general law, by proving a local custom or usage prevailing in Atlanta, under which it was claimed that brokers were recognized as representing the persons who employed them to sell in afterwards cancelling sales and taking charge of the goods themselves; and it was decided that no such custom would affect the seller unless it was known to him, so that his assent thereto could be reasonably inferred.

So, on the whole, we conclude that under the facts, the judge erred in rendering a judgment in favor of the defendants.   We, of course, recognize the correctness of the principle asserted by counsel for the defendants in error, that when the liability of the defendants

became that of mere warehousemen, they were bound only to exercise ordinary diligence in making a delivery of the goods; but we are constrained to hold that they failed to observe even this degree of diligence. Granting that notice to Farrar of the rejection of the consignment by Rogers, Jones & Moore was in law equivalent to *notice* of this fact to the sugar refining company, it by no means follows that *a delivery* to Farrar, or to his order, was authorized. On the contrary, we are decidedly of the opinion that the evidence fails to show any lawful excuse or justification for such delivery, and that ordinary diligence would have required defendants to go at least one step further and obtain satisfactory evidence that Farrar really had authority to direct the delivery in behalf of the plaintiff, if such was the fact; and if not, to hold the goods subject to the consignor's order.                    *Judgment reversed.*