STEWART, receiver, *v.* COMER *et al.*, receivers.

A written contract of affreightment stipulating that if the goods were loaded in a box-car the rate should be so much per hundred pounds actual weight, and if loaded on a flat car so much per hundred pounds for 10,000 pounds, the actual weight of the consignment being only 1,550 pounds, and the carrier having loaded a part of the goods in a box-car and part on a flat car, in a way to make the freight as an aggregate more than it would have been if the whole consignment had been loaded on either car: *Held*, that prima facie this was an overcharge, and in the absence of evidence on the part of the carrier showing why the goods were so loaded, the plaintiff, after paying the whole charge and complying with the terms of section 2316 of the Civil Code, was entitled to recover the amount of the overcharge, and in addition thereto the penalty prescribed by said act. Where a carrier has an option as to the mode of shipment, it is his duty to exercise it reasonably under the circumstances for the best interests of the consignee; and it is a breach of the contract to exercise it to his disadvantage, unless it is done in good faith and under circumstances which seem to require it.

Argued January 8,—Decided March 29, 1897.

Action for overcharges. Before Judge Berry. City court of Atlanta. May term, 1896.

This suit was brought by the consignee of a shipment of plate glass, against the terminal carrier, for the amount of an alleged overcharge of freight, and for the penalty provided by the act of 1889. (Acts, p. 136.) The trial court granted a nonsuit, and plaintiff excepted. It appears, that in August, 1893, plaintiff ordered eight plates of glass from New York, to be shipped to Atlanta. They were shipped in two cases, one containing five plates, the other

three.    The bill of lading named as the rate, if loaded on
box-car, $1.14 per 100 pounds actual weight; if loaded on
flat car, 73 cents per 100 pounds for 10,000 pounds.    It
stated that the shipment was to be made by a steamship
designated.    The defendant carried the shipment by rail
from Savannah to Atlanta, the case containing five plates
in a box-car and that containing the three plates upon a
flat car, and charged freight accordingly, the bill for the
five plates being $14.31, and the bill for the three plate
case being $73.00.

Plaintiff testified: They overcharged us on the glass,
and they told us to make a claim for the difference, and
they would pay it in a few days.    I paid the freight as
requested, and it was never paid back to me.    The agree-
ment I had about a special rate was made with the shippers
in New York.    I did not see the car in which the five
plates were shipped, because that was unloaded and put
into the depot; but I saw the other car and the glass on
it.    The plates on that, the flat car, were 100 by 118 inches
in size.    The rate of $1.14 on freight loaded in a box-car
from New York to this place was the rate we got the
glass at.    It was the legal and customary rate at that time.
I never had any agreement or contract with these people
to ship freight in violation of the laws, in order to evade
the statute; nor did I ever authorize the shippers or any-
body else to make a contract that was a violation of the law,
for the purpose of evading the statute.

Another witness testified: I know about this shipment
of glass.    I saw the shipment that came in the flat car.
The largest size in the box-car was 100 by 118 inches.
There were three lights of glass in the box, the largest size
being 100 by 118.    All these eight plates could have
come on one car.    One of the defendant railroad's men
and I went out and measured, and we decided that it could
easily be put in a box-car.    The dimensions of freight-cars
differ; some are 124 and some 123 1-3 inches.    The larger

glass was 100 inches. I measured this car. It was 123 inches. I do not know that this was the car the glass came in. The car was in the yard. We went in the yard to see if the glass could come in that car. That was about the usual height of those doors. Mr. Wood, depot agent of the defendant railroad, and I went over, and we measured several. The glass could easily have gotten in a box-car. The eastern and western cars are so large, they could have gotten in without any trouble. Wood and I agreed it could come in a box-car. It was a little box-car that we measured. I do not know that it was a car of the defendant, nor anything about the dimensions of defendant's freight-cars. I am not mistaken about my conversation with Wood. I am satisfied I am right. The frame we measured was about, I cannot say positively, 103 inches. The whole thing, box and all, was 103 inches, after the glass was packed and the cover put on. I went and saw the car with Wood. I suppose it was a freight. It was in his yard. We went over the matter particularly, to get it adjusted. He said, at the time, he did not see why it could not be put in a box-car.

Plaintiff introduced, in addition to the bill of lading and bills for freight charges, the formal written claim made by him upon the defendant, etc. It appears, by recital in the bill of exceptions, that the nonsuit was granted upon the sole ground, that there was not enough evidence to prove that the defendant had a box-car with a door of sufficient capacity to have received the cases of glass.

*Goodwin & Westmoreland* and *Charles Z. Blalock*, for plaintiff. *Dorsey, Brewster & Howell* and *Hugh M. Dorsey*, for defendants.

SIMMONS, Chief Justice.

In issuing the bill of lading the carrier reserved an option as to the mode of shipment, and the price was to

be controlled by the method of shipment adopted. If the plate glass was shipped in a box-car, the price for the freight was to be $1.14 per hundred pounds actual weight; if shipped upon a flat car, the rate was to be 73 cents per hundred pounds for 10,000 pounds. Three plates of the glass were shipped on a flat car, for which the carrier charged $73.00; and five plates were shipped in a box-car, for which the carrier charged $14.31. It was not contemplated in this contract of affreightment that the glass should be divided and part shipped in a box-car and part on a flat car. We think that the contract means that the eight plates of glass should all be shipped by one method either in a box-car or on a flat car.

The weight of the eight plates of glass appears to have been 1,550 pounds. If all of them had been shipped in a box-car, the freight would have been $17.67; if all had been shipped on a flat car, the freight would have been $73.00. The carrier charged $87.31 for the two shipments. This, without explanation on the part of the carrier, is an overcharge according to the contract. Section 2316 of the Civil Code provides, in substance, that where any common carrier shall demand and receive, for goods shipped from within or without this State to any point in this State, any overcharge or excess of freight over and beyond the proper or contract rate of freight, and a demand in writing for the return or repayment of such overcharge is made by the person paying the same, the common carrier shall refund said overcharge within thirty days from said demand; and if it shall fail or refuse to do so within thirty days, then it shall be liable to said person making the overpayment in an amount double the amount of the overpayment. This being prima facie an overcharge, the plaintiff having paid it and given the written notice required, and the common carrier having failed to refund it within the thirty days, the plaintiff was entitled under the code to recover it in an action brought for that

purpose and also to recover the penalty imposed. It will be observed that the penalty is not inflicted upon the common carrier for making the overcharge, but for its refusal to refund within thirty days after demand is made in writing. So it seems that where there is an overcharge of freight by a common carrier and the person to whom the shipment is consigned pays it and makes demand in writing upon the carrier to refund such overcharge, and the carrier fails to do so within thirty days, as a matter of law such common carrier is liable both for the overcharge and the penalty.

It is contended that the common carrier, having reserved to itself in the contract an option like the one in the present case, has the right to exercise its option to advance its own interest and not the interest of the shipper, and that inasmuch as this option was to ship the glass in either kind of car, it could divide the shipment as it did, if it was to its interest to do so. The rule, however, seems to be the contrary of this. It is laid down in Hutchinson on Carriers, section 313*a*, as follows: "Where a contract for the transportation of goods gives the carrier an option between modes of transportation, this option must be exercised with regard for the interests of the shipper; and it is a breach of the contract to exercise it to his disadvantage, unless it is done in good faith and under circumstances which seem to demand it." See also Blitz *v.* Union Steamboat Co., 51 Mich. 558; s. c. 17 N. W. R. 55, decision by Judge Cooley. We think therefore that where a carrier has an option of this kind, he must exercise it reasonably, under the circumstances, to the best interests of the consignee or shipper; and it would be a breach of contract to exercise it to the disadvantage of the consignee or shipper, unless it be done in good faith and under circumstances which seem to require it. We think also that the burden is upon the carrier to show that it did exercise the option reasonably under the circumstances. If the carrier adopts a mode-

of transportation which involves the payment of a higher rate of freight rather than a lower, it may show that it asked for and obtained direction from the shipper or consignee to employ the more expensive mode; or that, because of its inability to procure the means of shipment by the cheaper method, it was reasonably necessary, in view of the exigencies of the particular case and in order to complete the contract of carriage, to resort to the other and more expensive mode; or it may show other facts and circumstances which would justify it in exercising its option in a manner disadvantageous to the shipper or consignee.

*Judgment reversed.    All the Justices concurring.*