## ALABAMA GREAT SOUTHERN RAILROAD COMPANY *v.* McKENZIE *et al.*

1. If a shipper does not route his shipment, the carrier may select the route if there be more than one. But he must exercise the option of selection reasonably under the circumstances, to the best interests of the consignee and shipper, and not to their disadvantage unless in good faith and under circumstances which seem to require it.
2. Where a carrier offers delivery of goods to a consignee who refuses to accept them, the carrier is chargeable with the duty of notifying the shipper with reasonable promptness that the goods are held subject to his order. The perishable nature of the goods will not excuse the omission of the carrier to give this notice where it is practicable to do so, and will not authorize the carrier to sell them. If the carrier does sell them without notice when it is practicable to give such notice, such sale is a conversion, and makes the carrier liable for the value of the goods at the time of his dereliction of duty. And where the carrier sells without notice to the shipper, the burden is on him to show inability to communicate with the shipper, as well as an emergent condition requiring a sale to prevent loss.
   (*a*) The facts of this case do not bring it within the operation of the Civil Code, § 2758, even if that section be applicable to a shipment between points in other States.
   (*b*) The charge of the court on the measure of damages was more favorable to the defendant than it was entitled to, and under the facts will not require a new trial, though it was not entirely accurate.
3. A witness with twenty years experience in the business of handling, buying, and selling fruit, and who professes to know from given data the cause of decay in a shipment of peaches, may qualify as an expert. The ultimate weight to be given to his opinion is for the jury, who may accept it or reject it, and act upon their own judgment as applied to the general evidence in the case.

4. In an action for damages accruing from delay in transportation, it is a proper matter of inquiry as to the time ordinarily required for carriage between two points, the preparations made by the carrier, the effort at dispatch, the character of the freight, and kindred circumstances.

5. The evidence supports the verdict, and the grounds of the motion for new trial present no sufficient reason for disturbing the verdict.

FEBRUARY 11, 1913.

Action for damages. Before Judge Fite. Dade superior court. September 19, 1911.

*Maddox, McCamy & Shumate*, for plaintiff in error.
*Foust, Payne & Tatum*, contra.

EVANS, P. J. McKenzie and Towers sued the Alabama Great Southern Railroad Company to recover damages resulting from a failure to promptly transport a car-load of peaches from Fort Payne, Alabama, to Providence, Rhode Island. It was alleged that the defendant was . negligent in that it failed to transport the peaches within a reasonable time, and to keep the car properly refrigerated. When the peaches were tendered to the consignee he refused to accept them, because of their damaged condition. They were afterwards sold by the railroad company, and the net proceeds were insufficient to pay the freight charges. The jury returned a verdict for the plaintiffs. A motion for new trial was made by the defendant, and was overruled.

1. The consignor did not route the peaches, and it appeared that the initial carrier had a choice of routes. Where a carrier has an option in the selection of routes, he must exercise it reasonably under the circumstances to the best interests of the consignee and the shipper; it would be a breach of contract to exercise it to the disadvantage of the consignee or shipper, unless this be done in good faith and under circumstances which seem to require it. *Stewart* v. *Comer*, 100 *Ga.* 754 (28 S. E. 461, 62 Am. St. R. 353). One of the issues in the case was the proper routing of the peaches, and whether there was a delay in transportation, consequent upon such routing, proximately causing the damage complained of; and the court did not err in giving an instruction conveying this legal proposition.

2. A bailment of goods to a carrier confers no power of sale; the contract relates to their transportation, and the carrier has no implied right to sell them under ordinary circumstances. If the consignee rejects the goods, the carrier's liability as such ceases,

and he becomes liable as warehouseman. As such warehouseman he is chargeable with the duty of notifying the consignor of the consignee's refusal to accept the goods, and with the further duty of holding the same subject to the order of the consignor. *American Sugar Refining Company* v. *McGhee,* 96 *Ga.* 27 (21 S. E. 383). It matters not whether the cause of the rejection of the goods by the consignee be attributed to their damaged condition or to the consignee's arbitrary refusal to accept delivery. A consignee can not abandon the goods to the carrier because they may be in a damaged condition, where that condition is not such as to practically destroy their value. *Wilensky* v. *Central of Georgia Railway Company,* 136 *Ga.* 889 (72 S. E. 418, 25 Ann. Cas. 271). When the carrier offers delivery to a consignee who refuses to accept the goods, the carrier is chargeable with the duty of notifying the shipper that the goods are held subject to his order. After rejection by the consignee the carrier holds the goods for the consignor; and it would be a breach of trust for the carrier to sell the shipper's goods without notice to him, unless the stress of circumstances be such as to justify the carrier in assuming the place of the owner respecting the preservation of the goods or the protection of the owner. An exception to the general rule which permits a carrier to sell the goods in case of an emergency was first evolved in fixing the liability of a carrier by sea. The reason of the rule is thus succinctly stated by Cockburn, C. J., in Notara v. Henderson, L. R. 5 Q. B. 346: "In every contract to carry freight there is an implied obligation on the part of the shipowner that in the event of any disaster happening to the ship or cargo in a port where correspondence can not be had with the freighter, the master shall act as his agent and use his best efforts for the protection and preservation of the cargo. He must in such an emergency put himself in the place of the owner of the cargo, and do what the latter, as a prudent man, would himself do for his own interest if he were present." The exception rests upon an impossibility to give notice to the shipper, and an emergent condition requiring the prompt exercise of discretion by the carrier. Though the goods be perishable, nevertheless the shipper must be notified, whenever practicable, before the carrier may legally sell them. "In order to justify the act of the carrier in making a sale of the goods, and to establish his title to them, the purchaser must show that there was a neces-

sity for the sale, arising from the perishable nature of the property, which made its preservation for the owner impracticable, or that, from that or some other cause, it was neither possible to proceed with its transportation nor to store it; that the carrier has acted in good faith and with sound discretion; and that it was impossible to communicate with the owner and to receive instructions from him as to the course to be pursued, without occasioning a delay which the circumstances and condition of the property would not admit. And whether, under all the circumstances, these conditions existed to justify the sale, is, when the action is one at law, a question of fact to be determined by the jury, under proper instructions by the court." 2 Hutchinson on Carriers, § 790.

The evidence discloses that no effort was made by the carrier to notify the shipper that the consignee had rejected the peaches. Of his own motion the carrier sold the peaches two or three days after their rejection by the consignee, and the net amount of the sale was $227.07, which was insufficient to pay the freight charges. In this day of progress, when the whole country is traversed by a network of wires, we can not assume that instant telegraphic communication with the shipper was impossible. The burden was on the carrier to show that it was impossible or impracticable to notify the shipper, and the testimony fails to disclose that any effort was made by the carrier to notify the shipper that the peaches had been refused by the consignee. A sale under these circumstances would amount to a conversion; and if the carrier's negligence was responsible for the deteriorated condition, he would be liable for the market value of the peaches. The measure of damages laid down by the court was more favorable to the carrier than he was entitled to have presented; and as the market value of the peaches was proved to be much in excess of the verdict, the instruction of the court on the subject, though not altogether accurate, should not cause a new trial.

We have before us section 2758 of the Civil Code, which provides that whenever the property transported is fruit, and it is not delivered, the same may be sold at public outcry on 24 hours notice of sale. Even if this section be applicable to a shipment between points located in other States, or to any interstate shipment, the range of the evidence does not bring the case within its terms.

3. A witness who had twenty years experience in the handling

of fruit as a dealer, during which time he had received many shipments by rail, and who inspected the peaches shortly after the arrival at destination, after testifying about the size, color, and condition of the peaches, was permitted to give his opinion that the peaches were in a decayed or unsound condition because they were so long in transit. This testimony was objected to on the ground that the witness did not qualify as an expert, and gave no facts upon which his opinion was based. An expert is one who by habits of life and business has a peculiar skill in forming an opinion on the subject in dispute. *White* v. *Clements,* 39 *Ga.* 232. The witness was an experienced fruit dealer, and his testimony concerned a matter within the scope of his business; and we think he sufficiently qualified as an expert witness. The basis of the opinion of an expert witness is upon facts within the knowledge of the witness as observed by him, or upon facts hypothetically stated. When the testimony of an expert witness is offered, and objection is made to his qualification to testify as such, this preliminary question is to be decided by the court. No fixed rule or nice distinction can be established by which the trial judge shall determine the exact amount of knowledge, experience, and skill a witness must have before he can qualify as an expert. After the evidence is in, the ultimate weight to be given to it is for the jury, who may accept it, or reject it and act upon their own judgment as applied to the general evidence in the case. The Conqueror, 166 U. S. 110, 133 (17 Sup. Ct. 510, 41 L. ed. 937). The accuracy or inaccuracy of the expert's deduction is not a criterion for or against the admissibility of the evidence.

4. The plaintiffs were pressing the contention that the defendant company recognized that fruit was entitled to receive and did receive more rapid transportation than freight which was not of a perishable nature, and asked a witness if the railroad company between the initial and delivery points of this shipment did not give a preference to fruit over other classes of freight. The witness made answer that "they claim to put on the fast through train." This evidence was objected to, because it evinced a purpose to set up a special contract when none was alleged. We do not think so. The purpose of this testimony, and its clear import, was not to set up a special contract for this shipment, but to develop facts as tending to show that the carrier classified perishable goods dif-

ferently from non-perishable goods, and furnished transportation facilities in keeping with such classification. In an action for damages accruing from delay in transportation, it is a proper matter of inquiry as to the time ordinarily required for carriage between two points, the preparations made by the carrier, the effort at dispatch, the character of the freight, and kindred circumstances. *Columbus & Western Railway Company* v. *Flournoy*, 75 *Ga.* 745.

5. The evidence authorized the verdict, and the grounds of the motion present no sufficient reason for another trial.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*