## PENNSYLVANIA RAILROAD CO v GENTILE BROTHERS CO

Ohio Appeals, 1st Dist, Hamilton Co

No 4433. Decided Jan 8, 1934

Maxwell & Ramsey, Cincinnati, for plaintiff in error.

Hightower & O'Brien, Cincinnati, for defendant in error.

## OPINION

By ROSS, J.

There is no real controversy as to the facts. It appears that the defendant in error is in error in one respect however, the shipment mentioned in the first cause of action from Thomaston, Georgia, was originally made and consigned by L. G. Woodall, and not defendant in error, as alleged. This becomes unimportant as in each case the defendant in error was accepted by the Railroad Company as the reconsignor.

The plaintiff in error depends upon the recitals in the bill of lading, hereinbefore quoted, for its authority to sell the property of the defendant in error.

The sale by the Railroad Company is not disputed. The burden, therefore, is upon the Railroad to justify such sale. If it fails to do so, its act amounted to a conversion of the shipment.

It justifies its action upon evidence that the peaches were in danger of further deterioration and that immediate sale was necessary in order that the damage to the owner might be minimized. The peaches were inspected by an inspection bureau and sale recommended.

There is evidence that the peaches were delivered about 9:00 P. M., and were held by the consignee until 4:45, A. M., when they were refused; that the regular market upon the piers closed at 5:00 A. M., and that the peaches were sold at auction at 10:00, A. M., the same day. The state of deterioration, the necessity for immediate sale, the opportunity to give notice, the diligence of the Railroad Company in securing the best price, the care used by the Railroad in the handling of the peaches, the time extended the consignees for inspection, as well as the other matters noted above, were all for the consideration of the jury.

It was not so much a question whether the failure to give notice immediately or otherwise had caused or increased the damages to the owner, but whether the facts, in view of the contract between the parties, justified the sale by the Railroad. If the defendant in error could show that the failure to give notice had caused or increased his damage, such proof would naturally have been competent, but it is difficult to see how such could be the case.

It must be remembered in this connection that it is admitted that no notice was given or attempted to be given, and that the reconsignors were known to the Railroad.

It is obvious from the phrasing of the section quoted from the bill of lading that the question of notice is an incidental issue.

The right to sell the shipper's property is the essential factor covered in the clause. This must ever be a matter of most serious concern to every shipper. To justify a sale it is evident that keeping in mind the provisions of the bill of lading the Railroad must show complete justification for such exercise of dominion over the property of the shipper, and the intent of the shipper must be considered of first importance. We find no better statement of the law applicable than that contained in 4 R.C.L., §307, pages 853 and 854:

"Without other authority than that which he has as carrier, a common carrier has ordinarily no right to sell goods intrusted to him for conveyance. If he does so the sale is a conversion; it passes no title to

the purchaser, and the latter will be responsible to the owner for the goods sold. Pressing necessity may occasionally invest a carrier with authority to sell in the interest of the owner and to save the latter from a greater loss, as where a cargo of goods is damaged, or cannot be carried to its port of destination or would be worthless on its arrival there. But whenever it is practicable to communicate with the owner or others interested in a shipment, even though the goods are perishable, it is the duty of the carrier to do so, and to receive directions before disposing of the property. Good faith in selling a damaged cargo and the honest exercise of discretion on the part of the master will not protect him or his employes, if there in fact existed no necessity for the sale. Even where charges for carriage remain unpaid, or the consignee is absent or refuses to receive the goods when tendered, the carrier cannot of his own mere motion, without the aid of some enabling statute, summarily dispose of the goods, he has his lien and can retain and store them until payment of the sum for which they are chargeable, but except under judicial order or legal process he cannot sell. Moreover, even if the goods are of a perishable nature and it becomes a matter of necessity to sell, the carrier must first consider what is best to be done for the owner, for there is a trust imposed on him in reference to the goods which the law will not permit him to ignore in order that he may make his own lien effectual. He may sell in such case, not by virtue of his lien, but by virtue of his trust relation to the owner, and in the interest of the owner. Out of the price he may unquestionably retain his freight and charges, but he sells in such case in the interest of the owner and not by virtue of his lien. He continues in his just relation to the owner and is bound to all the fidelity of other agents. Thus it is said that in such a case he becomes, by mere intendment and authority of law, the agent of all concerned, and, on unquestionable proof of necessity, he may sell the goods. But goods must be perishable, and the sale must be one of absolute necessity to the owners."

See also: Alabama Great Southern Railroad Co. v McKenzie et, 139 Ga. 410, (77 SE 647).

It is claimed that the charge of the court is inconsistent with these well recognized principles affecting the carriage of freight, and several excerpts from the general charge are noted, which it is asserted are in conflict with the law applicable. It would unduly cumber the record to quote from the charge as extensively as would be necessary to show that all the essential requirements were fully and correctly covered. Taking the whole charge, it is our conclusion that the jury were amply and correctly instructed. The jury had ample evidence presented to it from which it could conclude that the sale was unwarranted, and consequently a conversion of the property of the shipper.

In the other contentions of plaintiff in error, we find no error prejudicial to the plaintiff in error.

The judgment is affirmed.

HAMILTON, PJ, and CUSHING, J, concur.