## Harris *vs.* The Central Railroad, and *vice versa.*

1. The cause of action alleged being the homicide of plaintiff's husband by means of the defendant's negligence, the allegations in the declaration touching the specific acts of negligence and the manner of causing death, may be varied or added to by amendment during the progress of the trial, so as to adapt the pleadings to the evidence in all its aspects. In this case there was enough in the declaration to amend by; the amendment did not introduce a new cause of action, and it was not offered too late.

2. A witness may date a fact which he knows by relating it to the time when he heard of another fact; and in so doing may state not only that he heard something, but what that something was, in order to let the jury see what reason he had to observe and remember. But the hearsay, though he repeats it on oath, is no evidence either of the occurrence or of the date of the fact which it purports to affirm.

3. It is the duty of the court both to protect a witness under cross-examination from being unfairly dealt with, and to allow a search-

ing and skillful test of his intelligence, memory, accuracy and veracity. As a general rule, it is better that cross-examination should be too free than too much restricted.

4. That at a former trial a different theory of defence was relied on is not relevant as matter of evidence, and the exclusion of testimony to that effect is not error.

5. The statute does not require that a train started at or upon a public crossing should be checked and kept checked while passing over that crossing.

6. Whether, in a given case, due diligence requires that a train should leave on schedule time, or whether persons upon it, not as passengers, should alight from it before the time of departure fixed by schedule, or whether, when a train is starting or about to start, a person passing in front of the engine should see to it that the train is not moving or about to move, are all questions of fact for the jury, and not for decision by the court in its general charge.

7. Where a verdict was rendered in favor of the defendant, a motion for a new trial made by the plaintiff during the term of the trial and overruled, to which judgment the plaintiff excepted, the defendant could file a cross-bill of exceptions complaining of the allowance of an amendment at the trial, although more than sixty days from that time. (Rep.)

March 12, 1887.

Amendment. Evidence. Witness. Practice in Superior Court. Railroads. Streets and Sidewalks. Negligence. Charge of Court. Practice in Supreme Court. Before Judge VAN EPPS. City Court of Atlanta. December Term, 1886.

Lucinda Harris brought suit against the Central Railroad and Banking Company to recover damages for the homicide of her husband. The pleadings are sufficiently stated in the decision. The case as it stood at the first trial will be found reported in 76 *Ga.* 501. On the last trial, the jury found for the defendant, and the plaintiff moved for a new trial on the following grounds:

(1), (2) Because the court admitted the following testimony of J. J. Kell: "One of the train-hands came down to the engine and said to me, 'We have run over a man in the shed.'"—The objection was that it was hearsay; and the court overruled the objection, stating, "I admit it,

not for the purpose of establishing the truth of the facts, but as tending to establish the date or occasion in question." [The witness testified that he was defendant's engineer, running between Atlanta and Macon; that he left Atlanta every other day, his schedule time of leaving being nine o'clock in the evening; that his orders were to start slowly and ring the bell, which he always did, and did so that night; that he did not remember dates, but always used proper precautions; that he did not know that a man had been killed and did not hear of it till his train reached Forrest Station, about thirteen miles from Atlanta, where the train-hand came and told him, as above stated; and that the train struck no obstacle in crossing the street in front of the depot. Other witnesses stated that deceased was killed November 12, 1883.]

(3) Because of the following ruling: In cross-examining the witness, Kell, the plaintiff's counsel drew the following answers: Q. "You are pretty confident that you went out on the first day of November?" A. "Yes, sir." Q. "Why?" A. "By the conductor's report." Q. "Then, of your own knowledge, you do not know that you went out on that day?" A. "No, sir; you see I don't keep the day of the month. I did not notice anything like that." Q. "Did you turn to the conductor's report to see if you went out that 1st day of November?" A. "No, sir; I have his words, sir." Q. "Then your testimony about not having run over this man on the first day of November is based upon somebody else's word?" The defendant objected to the last question as a misstatement of the witness's testimony, and the court sustained the objection.

(4) Because the court excluded testimony offered by the plaintiff to show that, on a former trial, the defendant first relied upon the theory that the train of another railroad killed the plaintiff's husband, and not that of defendant.

(5) Because the court charged as follows? "The principle of law which requires a railroad company to check and keep checking the speed of a train at a public crossing,

so as to stop in time should any person or thing be crossing said track on such road-crossing, has no application to where the train is stationary in the depot with its engine immediately out from under the car-shed; it applies only to running trains approaching public crossings, and not to trains starting at a public crossing."

(6) Because the court charged as follows : " Where the train is starting out on a crossing, or about to start, ordinary diligence would require that a person attempting to pass ahead of it, and before such train, should see to it that such train is not moving or about to move."

(7) Because the court charged as follows: " The safety of passenger traveling upon the railroad train requires that a definite time should be fixed by schedule for the departure of such train, and the care and diligence which the law imposes upon the railroad company require that such train should start at the time appointed for its departure. The defendant has the right to fix the schedule time at which its train shall leave its depot, and ordinary care and diligence would require the persons on such train, not intending to travel thereon as passengers, should leave such trains before the time fixed by the schedule for the departure of the train.   Diligence would not require that the railroad company should delay the departure of its trains until after the schedule time appointed for its departure had passed, to enable persons thereon not intending to travel thereon as passengers to get off the train." [The court, among other things, charged §3033 and parts of §§2972, 3034 of the code, and defined ordinary care.]

The motion was overruled, and the plaintiff excepted. The verdict was dated October 14, 1886; the order overruling the motion December 23; plaintiff's bill of exceptions certified December 27, and service of it acknowledged December 28.   The defendant filed a cross-bill of exceptions, which was certified December 27, 1886, and in which error was assigned because, after the close of plaintiff's testimony and pending the introduction of tes-

timony by defendant, the court allowed plaintiff to make the amendment set out in the decision. The objections were that there was not enough in the pleadings, as they then stood, to authorize the amendment to be made ; that it would add a new and distinct cause of action ; and that it was too late, at that stage of the trial, to make an amendment.

On the call of the cases in the Supreme Court, a motion to dismiss the original bill of exceptions was made on the ground that it did not " specify plainly the decision complained of and the alleged errors." The plaintiff in error moved to dismiss the cross-bill of exceptions on the ground that it was presented to the presiding judge more than sixty days after the decision complained of. Both motions were overruled.

HOKE & BURTON SMITH, for plaintiff.

HENRY JACKSON, for defendant

BLECKLEY, Chief Justice.

This was an action by a widow to recover damages for the homicide of her husband. There was a verdict for the defendant, and a motion for new trial by the plaintiff, which was overruled. The judgment overruling the motion was rendered more than sixty days after the trial; notwithstanding which fact, the defendant sued out a cross-bill of exceptions, complaining of a ruling of the court made on the trial. When the case was called here for argument, a motion was made to dismiss the cross-bill on the ground that it was sued out too late. Our decision on that point is, that there was no right to a cross-bill until the principal bill had been signed, and that, as the cross-bill was of the same date, or near the same date, as the principal bill, it was in time. The motion to dismiss the cross-bill of exceptions is overruled.

v 78-34

1. The matter of that cross-bill was the allowance of an amendment, which was offered and made pending the introduction of evidence by the defendant. The amendment being to the declaration, the .propriety or impropriety of allowing that amendment will depend upon the declaration as it stood before amendment. Looking to the original, we find that the substance of it was that the plaintiff's husband was killed by the running of the defendant's train, locomotives, cars and other machinery; his death was the result of no negligence on his part, but was due to the negligence of the defendant; it was the result of failure by the defendant to use any of the precautions required of railroad companies at public crossings, and to use reasonable care to prevent injury to passers by at Pryor street crossing, where he was killed.

An amendment, prior to the one excepted to, had been made, which alleged, in substance, this: The railroad crosses Pryor street and goes to the end of the car-shed; the engine started on the edge of the sidewalk and across the walk and street without ringing the bell or giving any sufficient signal of an intention to start. It started and ran too rapidly, and the circumstances were such as to require special care by the defendant; but the defendant failed to exercise ordinary care, or any care, and this negligence caused the homicide.

The amendment finally made, and the one excepted to, was, in substance, as follows: The defendant failed to furnish a safe way for egress from the cars, in this: It placed an iron rail around the platform of a car and did not provide steps to another car next to the former, nor proper rails for the protection of persons on the steps. A number of persons were upon the latter car bidding friends good-bye; they were there by permission, express or implied, of the defendant, and were negligently urged by the defendant from the car, and whilst they were getting from it the train started, the conductor not allowing sufficient time for those persons to descend, nor did he

stop the train or use any care to prevent an accident, though he saw a crowd endeavoring to get off, and saw that the plaintiff's husband, in climbing off the platform, had fallen between the cars and was hanging to one of the posts of the railing. These acts were gross negligence on the part of the defendant, and caused the death of the plaintiff's husband, who was on the train by the defendant's permission, and was in the exercise of due diligence.

The cause of action was the homicide of the plaintiff's husband by the negligence of the defendant. In setting out that negligence, it was described in one way in the original declaration, in another by the first amendment, and in another by the second amendment. But it was all the same cause of action. It might be tested thus: Suppose it were lawful to amend indictments for murder, and you had an indictment for the murder of A, alleging that it was by shooting, and the proof disclosed that it was by stabbing; could an amendment alleging that it was by stabbing be thought to charge another and different crime? The crime in the supposed case would correspond to the cause of action in this. Would it be charging the defendant with another crime to add another count, or to allege in the same count that the death was the result of stabbing, or other means than shooting, the means first charged? We think not. There can be but one cause of action for the homicide of any one man, and all these variations went to the means and mode by which the homicide was perpetrated; and the present case is a good illustration of the propriety of at least a discretionary power of allowing such amendments; because, as the plaintiff understood her case, and proved it, the homicide was the result of an occurrence at the crossing, separated altogether from the cars and the condition of the cars. But the defendant introduced evidence, of which probably the plaintiff had no knowledge or information before, tending to show that the killing occurred in consequence of the husband's being upon the train and attempting to get off, and exposing himself,

or becoming exposed, while in the act of alighting. It would be a great hardship to make this action fail because of the difference and the doubt as to how the death really came to pass, provided that it was the result of defendant's negligence. It was a proper case for amendment, and it would have been an abuse of the law of amendment had this amendment been disallowed. The cause of action alleged being the homicide of plaintiff's husband by means of the defendant's negligence, the allegations in the declaration touching the specific acts of negligence and the manner of causing death may be varied or added to by amendment during the progress of the trial, so as to adapt the pleadings to the evidence in all its aspects. In this case there was enough in the declaration to amend by; the amendment did not introduce a new cause of action, and it was not offered too late.

On the cross-bill of exceptions, therefore, the judgment is affirmed.

2. Passing now to the main case, the first ground of the motion for new trial which we notice is, that a witness was permitted to testify that another person told him at a certain station that the train had run over a man in Atlanta and killed him. This evidence, with some more of the same sort, was objected to on the ground that it was hearsay. The court overruled the objection and admitted the evidence for the sole purpose of fixing the date. Whether the court meant that it was to fix the date of the homicide or the date of certain facts about which the witness detailing the hearsay testified, we do not positively know. The record is somewhat uncertain as to which one of these dates the court had in mind. The evidence is admissible for the purpose of fixing one of them, but not for the purpose of fixing the other. A witness may date a fact which he knows by relating it to the time when he heard of another fact, and in so doing, may state not only that he heard something, but what that something was, in order to let the jury see what reason he had to observe

and remember; but the hearsay, though he repeats it on oath, is not evidence either of the occurrence or of the date of the fact which it purports to affirm. The fact of a homicide and the time of a homicide were indicated by this hearsay, but the witness who repeated it adverted to it, not for the purpose (so far as his own mind was concerned) of showing either the fact or the date of the homicide (for these he did not know), but of fixing the time when, as he remembered, his locomotive did not run over anybody, and when he used certain acts of diligence in the starting of that locomotive from the car-shed in Atlanta and in passing over Pryor street crossing.

Now, for the purpose of showing that the witness knew and remembered that on a given date, without knowing the day of the month, or the week, or even the year, he did not run his engine over anybody, and that the bell was rung, and that he ran slowly in starting, this conversation with the other party was admissible; and in order that the jury might see how strong an impression it probably made upon his mind, it was proper to let him detail what his informant had said; but that saying was not any evidence whatever that a homicide had taken place, or, if it did take place, that it was on that day rather than any other day. The evidence for its appropriate purpose was admissible, and the court ruled it in, stating that it was to fix a date. We are bound to presume that it was to fix the date it was competent to fix, and not one that it was incompetent to fix; and therefore we hold that there was no error which appears to us in admitting the evidence.

3. Another ground of the motion for new trial is, that in the progress of the examination of this witness, the court, at the instance of counsel for the defendant, interposed, and refused to allow a certain question to be propounded, or to be insisted upon after it was propounded. The objection to that question was that it misrecited the evidence of the witness, and endeavored to get him to commit himself to an error embraced in the recital with reference to the month and day of this event.

On that we simply rule this : It is the duty of the court both to protect a witness under cross-examination from being unfairly dealt with, and to allow a searching and skillful test of his intelligence, memory, accuracy and veracity.   As a general rule, it is better that cross-examination should be too free than too much restricted.   This is a matter that necessarily belongs to and abides in the discretion of the court.   In this instance we do not see that the discretion was abused, although we are inclined to think that if the examination had been allowed to proceed, it would ultimately have done no injustice to the witness; and the court might have interposed in another way, that is, by calling the attention of the witness to this specific date, and giving him an opportunity to explain.   There must be allowed some degree of skill, if not sharpness, in conducting cross-examinations, because a witness, however fair and honest and truthful, may not be careful enough, and it is to the interest of justice to expose the blundering of a witness, as well as his willful departures from veracity.   A jury ought to be made to know what character of mind they have before them on the witness-stand, whether they have a careful, cautious witness, or one who is disposed to take things on trust.   That is quite essential.   But the court is there, watching the proceedings, and acquainted with all the surroundings; it is proper to leave such a question to the discretion of the court; and we so do now.   The exact scene will never be repeated, and it is unnecessary to rule upon it more specifically.

4. Evidence that at a former trial of the case the defence relied upon a different theory from the one presented at this trial (it is not stated what sort of evidence), was offered and rejected.   We think that the court ruled properly in rejecting it.   Just as the plaintiff may vary a line of attack (and did it in this case), so the defendant may vary his line of defence.   Taking position in the field and fighting once in that position will not prevent a change; indeed, in the same trial the defendant may not only urge

different defences, but contradictory defences.  He may take all the chances in his favor, just as the plaintiff here relied upon one mode of killing at the crossing and another by falling from the cars.  It is quite right, and there ought to be no grudging of latitude to bring out the truth; all the truth, and all aspects of it.  That at a former trial a different theory of defence was relied on is not relevant as matter of evidence, and the exclusion of testimony to that effect is not error.

5. It is contended that the statute regulating the checking of the speed of trains at public crossings is applicable to this case.  We think not, and hold, on the contrary, that the statute does not require that a train started at or upon a public crossing shall be checked and kept checked while passing over that crossing.  By natural laws, instead of the situation being one for checking and keeping checked, it is one for unchecking.  In passing from rest to motion, no checking is possible; the statute contemplates a state in which there can be less motion, not one in which, to make progress at all, there must be more.

6. The charge of the court touching diligence is complained of.  Whether in a given case due diligence requires that a train should leave on schedule time, or whether persons upon it, not as passengers, should alight from it before the time of departure fixed by schedule, or whether, when a train is starting or about to start, a person passing in front of the engine should see to it that the train is not moving or about to move, are all questions of fact for the jury, and not for decision by the court in its general charge.  The court undertook to instruct the jury that a train ought to leave on schedule time, and that the conductor ought not to delay its departure beyond schedule time in order to give persons an opportunity to get off.

It moreover instructed the jury that ordinary diligence would require that a person passing in front of an engine in the act of starting, or about to start, should see to it that

it was not starting or about to start. These were all questions for the jury, under the special circumstances. They are questions of fact, rather than of law, because diligence has to be determined in view of the conditions, the special conditions, existing at the time the conduct under investigation took place; and the standard of decision for ordinary diligence is the conduct of a man of ordinary prudence under like circumstances. That standard is supposed to be in the minds of the jury; and it is the standard in the minds of the jury with which the conduct involved in the particular case is to be compared. That same standard may be in the mind of the judge, and he may be more competent to make the comparison; yet the law does not permit him to make it. He has no more to do with it than if he had no standard at all. He has no more to do with the determination of a question of diligence in a particular case than if he did not know and could not find out what would be the conduct of a man of ordinary prudence in such circumstances. He must simply refer it to the jury. He must tell them what the standard is; that is, give the description of it which the law gives. If it be a case for slight diligence, he must tell them it is that care which every man of common sense exercises; if it be ordinary diligence, he must tell them it is the care which every prudent man exercises; and if it be extraordinary diligence, he must tell them it is that extreme care and caution which very prudent and thoughtful persons exercise. But beyond this he cannot go, unless there is some statute to lead and conduct him.

Judgment reversed.