## ATLANTA ICE AND COAL COMPANY *v.* MIXON.

1. It is the province of the jury, not of a non-expert witness, to draw conclusions from the facts to which he testifies.
2. The inquiry being what was proper to be done under given circumstances at a particular point, proof of what was usually done at a point near by under different circumstances can not illustrate the question.
3. A finding against the defendant was warranted by the evidence, but the verdict returned in favor of the plaintiff exceeded in amount the highest proved value of the animal for injury to which the suit was brought, less the sum for which the animal was afterwards sold by the plaintiff and which diminished the damages sustained by him.

Argued May 26,—Decided August 13, 1906.

Certiorari.   Before Judge Pendleton.   Fulton superior court. November 10, 1905.

*Payne, Jones & Jones,* for plaintiff in error.

*Joseph W. & John D. Humphries,* contra.

EVANS, J.   A suit for damages was brought in a justice's court by E. P. Mixon against the Atlanta Ice and Coal Company, the plaintiff claiming that a heavily loaded wagon belonging to the company had been negligently driven over the left front foot of his mule while standing at the platform in front of the company's factory. The driver of the plaintiff's team testified that he had loaded his wagon with ice and was about to put on the wagon seat and drive out of the yard when a large two-horse wagon belonging to the company approached from the rear of the yard; that the roadway at the point where his team was standing was very narrow, and he called upon the driver of the company's wagon to stop, as there was not room to pass, but the company's "starter" turned the mule's head aside, pushed the mule back and ordered the company's driver to come ahead; and that the mule jumped as the wagon passed, one of its wheels having run over the mule's foot. The defendant introduced testimony which tended to support its contention that there was ample room to pass, and the injury to the mule was due solely

to the fact that after the front wheels of the wagon had passed, the mule suddenly threw out one of its fore feet directly in front of the rear wheel on that side of the wagon.

1. A witness who had testified in behalf of the defendant was asked the following question: "In view of the circumstances you have stated, that the plaintiff's mule turned its foot in front of the wheels of the company's wagon after the driver had passed, was it or not possible, in your opinion, for the driver of the company's wagon to have prevented the wagon wheels from running over the mule's foot?" Objection was made by counsel for the plaintiff on the ground that the question called for the mere opinion of the witness, and this objection was sustained. The ruling was eminently proper, it being within the exclusive province of the jury to say whether or not, under the circumstances detailed by the witness, the driver of the wagon could have prevented the injury after the mule had thrust its foot in front of the rear wheel which ran over and bruised it.

2. The defendant sought to prove that the plaintiff's driver had knowledge of a custom prevailing at the factory, in accordance with which wagons to be loaded with ice were driven up in turn to the platform, and after being loaded passed out by other wagons awaiting their turn which were backed up against the platform near where the plaintiff's wagon was standing; and further, that his driver knew it was customary for the driver of each team to look after his mule while other wagons were being driven on by. The evidence offered in this connection was rejected. It appears that the yard was of considerable width at one end of the platform but became narrower towards the point where the plaintiff's wagon was stationed, and the question at issue was whether, at that particular point, there was sufficient room to safely drive a team in front of his mule. What was the common practice near that point, but further down the yard, could not illustrate this question. Nor was it pertinent to show that the plaintiff's servant knew that the driver of each team was expected to look after his mule while wagons were passing in front on their way out of the yard. The plaintiff's driver did undertake to look after his mule, and called upon the company's driver to stop, saying there was not room to pass; but the company's "starter" interposed, pushed the mule back and turned its head, at the same time ordering the driver of

the two-horse wagon to come ahead. The plaintiff's servant was on hand ready and willing to look after the safety of his team, but the company's servant assumed control of the plaintiff's mule and ordered the company's driver to pass, over the protest of the servant of the plaintiff and with the result heretofore stated. It is clear, therefore, that the company could have taken no comfort out of proof of what the usual custom was when teams were driven in front of wagons backed up against the platform near the point where the plaintiff's team was standing.

3. The evidence well warranted a finding that the injury to the plaintiff's mule was caused by negligence on the part of the company's servants. The jury took this view of the case and returned a verdict for $75 in favor of the plaintiff. On certiorari to the superior court, the judge of that court declined to set aside the verdict, either because of the rejection of the testimony above mentioned or on the ground that the verdict was excessive and unsupported by the evidence. The highest proved value of the mule was $100; some time after its injury, the plaintiff sold the mule, on credit, for the sum of $35. There was no claim for damages on account of loss of hire or for expenses incurred in caring for the mule after the injury, nor any evidence along this line. It is clear that the jury did not allow the amount for which the mule was sold after the injury as a deduction from its highest proved value. It follows that the verdict should have been set aside, unless the plaintiff should voluntarily write off from his recovery the sum of thirty-five dollars, the price for which the animal was sold. In the event he shall do so, a new trial will be unnecessary, under the direction which we have given in the case; otherwise the verdict must be set aside.

*Judgment affirmed on condition. All the Justices concur, except Fish, C. J., absent.*