## PURSER *et al. v.* McNAIR.

1. Declarations of a testatrix made after the execution of her will, dated May 4, 1916, she having been adjudged a lunatic on February 14, 1917, and committed to the insane asylum, where she was confined until her death on July 6, 1918, to the effect that she had not made a will, were admissible in evidence on the probate of her will, to which a caveat was filed, embracing, among other grounds, that she was not mentally capable of making a will, and that the same had been procured by the undue influence of her nominated executor, to whom a legacy was therein given, not as evidence of the fact so stated, nor as evidence of any undue influence exerted over her by the executor, but solely for the purpose of showing the state of her mind when the instrument was executed, and upon the question whether she then had sufficient capacity to make a will, or was then in such a mental condition as to be unduly influenced by another.

2. In cases of doubt as to the admissibility of evidence, the current of authority in this State is to admit it and leave its weight and effect to be determined by the jury.

3. The slight error in rejecting this evidence may be regarded as immaterial, where the verdict is undoubtedly right, or where the result ought fairly to be the same if the rejected evidence had been admitted; and for this reason a new trial is not granted.

No. 2806.   MAY 13, 1922.

Appeal from probate of will.   Before Judge Graham.   Bleckley superior court.   July 29, 1921.

George H. McNair, the nominated executor, filed his application in the court of ordinary of Bleckley county, to probate in solemn form an instrument purporting to be the last will of Sallie J. Purser. J. P. Purser Sr., her husband, and J. P. Purser Jr., J. T. Purser, Pauline Purser, Robert P., and Sam Purser, her children, filed their caveat to this application, alleging that said will was not signed by said Sallie J. Purser; that at the time of making the same she was not of sound and disposing mind and memory; that she did not execute the same freely and voluntarily, but was moved thereto by undue influence exercised over her by George H. McNair; that she was imposed upon by false misrepresentations of said McNair, executor and legatee named in said pretended will, concerning the character of the husband, and was therefore influenced to disinherit him by said undue influence; that she executed said instrument from the over-importunities of the said McNair, and to obtain quiet and repose therefrom; and that at the time of its execution her mind and memory were exceedingly imbecile and weak, and divers practices were employed by unscrupulous persons to induce

her to make the disposition of her estate as contained in said instrument. By consent, the case was appealed to the superior court of said county.

The factum of the will, the apparent testamentary capacity of the testatrix, and that the will was voluntarily executed by her, were proved by C. A. Weddington and W. T. Ivey, two of the subscribing witnesses. A. W. Ard, the other subscribing witness, was shown to be dead, but the genuineness of his signature as a witness was proved by the other subscribing witnesses. C. A. Weddington, Esq., attorney at law, testified: The testatrix came to his office and employed him to write this paper, a few days before it was signed. He prepared it in accordance with instructions given him by her. She came back to his office later, when he presented to her the instrument which he had drawn and which she read. The instrument was executed in his office, and no one was present except the testatrix and the subscribing witnesses. When she first employed him to write this instrument she came to his office by herself. He had seen the testatrix only once before she signed this instrument.

George H. McNair, the propounder, testified that the first time he saw this instrument, his sister, Sallie J. Purser, handed it to him a few days before she went to the hospital in 1917. When she handed this paper to him she told him it was her will, and that she had given him the old home where they were all raised. Since 1915 her health was bad. Her health did pretty well up to 1917. She was gradually growing more feeble all the time. She died in the State Sanitarium at Milledgeville. She was adjudged insane in January, 1918, and died in July. In May, 1916, when this will was signed, her health was fairly good and her mind was all right. She was going about attending to her daily duties. She had mind enough to transact her business, she knew people who were kin to her, knew everybody she was acquainted with; she had sense enough to know what property she had, knew her friends when she met them on the streets; and her mind was normal, as it had been.

The instrument purporting to be the last will of Sallie J. Purser was introduced in evidence. Under this will she gave to her husband, John P. Purser Sr., ten dollars in cash; to her brother, George H. McNair, twenty-three acres of land, embracing the old McNair house, reciting that all their lives he had been kind,

faithful, and considerate to her and had stood by her in sickness, distress, and trouble; and she gave all the remainder of the property, both real and personal, to her children, share and share alike, and directed that the land in this item bequeathed be kept undivided until her youngest child became of age. This instrument was dated May 4, 1916. The testatrix owned a tract of land consisting of 125 acres. She died in the asylum on July 6, 1918.

John W. Walker, a witness for caveators, testified that he knew the testatrix for thirty years in a casual way, knew her in 1916 or 1917. Recalled the occasion of her going to Macon to a hospital. She dropped into the bank at that time, and she drew a hundred dollars upon her check. Said she was going for treatment. She appeared a little depressed. She appeared to be normal at that time. Witness made her a loan a year or two ago, and she was rational.

A. R. Manning for caveators testified: Knew Sallie J. Purser all her life. Lived about three quarters of a mile from her. The last years of her life her health was a little off, and her mind was a little bad. Once in a while she would just pack up and walk off from her young children without any cause, and stay two or three days. She did this two or three times. Have known her to go to some neighbors' houses and stay several days, without any apparent cause. Visited her home the last few years of her life, and noticed peculiarities about her. She did not act like I have seen her act in her younger days. She wandered over to my house after dark.

H. T. Asbell, a witness for caveators, identified the signatures to two checks, one dated July 3, 1916, and the other July 16, 1916, as the genuine signatures of Sallie J. Purser. As far as he knew she was in her normal mind at that time. Would think that she had sufficient mind to know what property she owned, and people related to her by natural ties, and mind sufficient to make a rational will or wish as to the disposition of her property.

Mrs. Gus Sanders, for caveators, testified: Lived about a mile from Sallie J. Purser during her lifetime. Lived there twenty-two or twenty-three years. Knew her well. Her health sometime prior to her death was pretty poor, and it got worse.

Caveators introduced the proceedings under which the testatrix was adjudged insane. These proceedings consisted of the sworn petition of John Purser Sr., in which he prayed for a commission

to be issued to determine her insanity, service of the petition on three of her relatives whose names do not appear, the appointment of a commission, dated February 14, 1918, the return of this commission finding that she was a lunatic, and the judgment of the court of ordinary committing her to the Georgia State Sanitarium.

Mrs. W. R. McNair, for caveators, testified: Knew Mrs. Sallie J. Purser nearly all her life. We lived hardly two miles apart. She was in bed for a month or two before she went away from home. Sometimes it seems she had good health, and sometimes she did not. Could not say that I observed anything different in her acts from what it had been formerly, to indicate any peculiarity or anything out of the way with her mind. She seemed to turn against her husband for a while. That was several years before she died. Did not observe any cause for that change. She just seemed to be discontented, and seemed to manifest it in jealousy. She would go away from her home sometimes, sometimes riding and sometimes walking. Sometimes she would stay away a night. She had some children at that time. One little boy.

J. P. Purser Sr., for caveators, testified: Sallie J. Purser and I were married thirty some odd years. After 1908 my wife left home pretty often. She would go out anywhere in the settlement. She wanted Dr. Jamerson to attend her. She sent for him. He came one Sunday night, and told her he would be back the next day. The next day she went to her brother Charlie's, and Dr. Jamerson attended her. He came another time and told me to bring her back home. I just could not keep her at home. She was bad off one morning. I sent after Dr. Whipple to come. She found out that I sent for him, and she got up and went to John Dykes'. When Dr. Whipple got there I was puzzled. He started in, and I said, " You need not go in there; she is not there." After 1908 she was never in good health until she died. From 1908 until she died her mind was a lot different from what it had been before that. Was convinced of the change in her mind from her actions. I would be in the store sometimes, and if she saw anybody go in there she would commence stamping her foot on the floor, walking backwards and forwards. She would leave home pretty often, and I would not know where she was gone. Would be out at the store sometimes at night, waiting on somebody; would go to the house and find she had taken a part of the children and gone,

and I would not know where she had gone. On the fourth day of May, 1916, her mind was bad, and it had been all along since she first commenced to show these symptoms. The doctor would leave medicine for the children, and sometimes she would not give the medicine to them. Sent for a doctor once for one of the children. She grumbled about being sick. Got the doctor to leave her some medicine. She would not take it and would not give it to the children, and I had to stay there and give it to them myself. She would not give it to them just because she was jealous of me. She frequently made accusations against me, which were not true.

It was admitted that the caveators were sole heirs at law of Sallie J. Purser.

Dr. R. L. Whipple, for caveators, testified: Knew Mrs. Sallie J. Purser, and was with her when her last child was born. Treated her afterwards, from April, 1908, to May 26, at intervals. She was suffering from run-down condition, undernutrition of brain-cells, from childbearing, lactation period, neurasthenic condition from childbearing, or puerperal lactation. These conditions were probably productive of mental disorders. Observed melancholia. Melancholia is a mental disease. Hysteria is a reflex disease. When these conditions produce a mental disorder it is progressive. If they do not get better, you would naturally and normally expect to see it worse from the time that condition started in. Saw Mrs. Purser again professionally in June, 1917, and the best I remember she was beyond the control of her actions and freedom of the will.

The above is the substance of the evidence in behalf of the caveators upon the subject of the insanity of the testatrix.

W. D. Porter, for propounder, testified: I have been tax-collector of Bleckley County for eight years. Was acquainted with Mrs. Sallie J. Purser. She owned 120 acres of land. She paid taxes on that property every year until 1917. Knew her for thirty years. She paid her taxes in 1916. From my business transactions with her and my knowledge of her would say she appeared to be in a rational state of mind. She appeared to be able to transact business. She had mind enough to know who composed her family and who was related to her. Could not say whether she had sense enough to form a rational desire as to what she wanted to do with her property, because I was only with her just a few minutes at a time, when I stopped there for her to pay her taxes. Never had

occasion to test whether Mrs. Purser had a normal mind or not. The husband of the testatrix owned property approximately of the value of $100,000.

The jury found in favor of the propounder. The caveators made a motion for new trial, which, as amended, was overruled; and error is assigned upon this judgment.

*Hamilton McWhorter, M. H. Boyer,* and *Hall, Grice & Bloch,* for plaintiffs in error.

*C. A. Weddington, L. A. Whipple,* and *W. A. Wooten,* contra.

Hines, J. (After stating the foregoing facts.)

1. Counsel for plaintiffs in error insist only on one ground of the motion for new trial; and that ground complains of the refusal of the court to permit three witnesses to testify that the testatrix made, subsequently to May 4, 1916, the statement that " she had made no will and had made no deed." Counsel for the propounder objected to this evidence as being inadmissible. The court sustained this objection and rejected this testimony.

Declarations of a testatrix, made shortly after the date when her alleged will purports to have been executed, to the effect that she had not made a will, are admissible in evidence on the trial of a caveat embracing, among other grounds, that she was not mentally capable of making a will, and that the same had been procured by the undue influence of the nominated executor, who is likewise a legatee under the purported will, not as evidence of the truth of the fact so stated, nor as evidence of any undue influence exerted over her in the matter by the nominated executor, but solely for the purpose of showing the state of her mind when the instrument was executed, and as throwing light upon the question whether or not she then had sufficient mental capacity to make a will, or was then in such a mental condition as to be easily and unduly influenced by another. *Williamson* v. *Nabers,* 14 *Ga.* 286; *Dennis* v. *Weekes,* 51 *Ga.* 24 (6); *Mallery* v. *Young,* 94 *Ga.* 804 (22 S. E. 142); *Credille* v. *Credille,* 123 *Ga.* 673 (3) (51 S. E. 628, 107 Am. St. R. 157).

The alleged will was dated May 4, 1916. The testatrix was adjudged a lunatic on February 14, 1917, and committed to the State insane asylum, where she died July 6, 1918. The exact time when these excluded declarations were made is not shown, except that they were made subsequently to the date of the will. They might have been made as much as two years after the execution of this

instrument. They might have been made at a much earlier period. If made prior to the adjudication of the testatrix as a lunatic, they would be of greater weight than if made thereafter. If made before this adjudication, they would have had to be made within a little over nine months after the making of the alleged will. In cases of doubt as to the admissibility of evidence, the current of authority in this State is to admit it, and leave its weight and effect to be determined by the jury. *Augusta Factory* v. *Barnes,* 72 *Ga.* 217 (5-a) (53 Am. R. 838); *Dalton* v. *Drake,* 75 *Ga.* 115; *Central R.* v. *Smith,* 76 *Ga.* 209; *Savannah etc. Ry. Co.* v. *Flannagan,* 82 *Ga.* 579 (3) (9 S. E. 471, 14 Am. St. R. 183); *Goodman* v. *State,* 122 *Ga.* 111, 118 (49 S. E. 922).

Under this liberal rule as to the admission of evidence, we think that the court erred in rejecting this testimony. The able trial judge very candidly states, in his opinion overruling the motion for new trial, that if his attention had been called to the *Credille* case he would probably have admitted this testimony.

While we think the rejection of this testimony was error, we do not think the error is of sufficient importance to require the grant of a new trial. The superior courts may grant new trials in all cases when any material evidence is illegally withheld from the jury against the demand of the applicant. Civil Code, § 6083. The attention of the court was not called to the purpose for which these declarations were offered. *Jeter* v. *Jones,* 135 *Ga.* 22 (2-*a*) (68 S. E. 787). There is no evidence of any undue influence exercised by the executor toward influencing the testatrix in making this will. We have set out in full, in the statement of facts, the evidence produced by both sides touching the mental capacity of the testatrix. The evidence for the caveators makes a weak case as to her mental incapacity at the time when this will was executed. The slight error in rejecting this evidence may be regarded as immaterial, where the verdict is undoubtedly right, and where the result ought fairly to be the same if the rejected evidence had been admitted. *Lewis* v. *Adams,* 61 *Ga.* 559.

2. The verdict is strongly supported by the evidence. Besides the general grounds, there is one other ground besides the one above considered. Counsel for the plaintiffs in error refer only to the latter ground in their brief; and do not refer to any of the

other grounds. For this reason we deal only with the ground con-sidered in the first division of this opinion.

*Judgment affirmed. All the Justices concur.*