33870. SAMMONS *v.* WEBB.

384

DECIDED JUNE 13, 1952.

*Denmark Groover, Hall & Bloch, W. D. Aultman Jr.,* for plaintiff in error.

*Culpepper & Culpepper,* contra.

TOWNSEND, J. ■ Since the argument of this case, it has been made to appear to the court that the plaintiff in error has died. "Where a party dies after the argument of a case in this court, it is unnecessary to make his representative a party to the case. The judgment shall be effective as of the date of the argument." Code, § 24-3642.

■ "At common law duplicity is ground for special demurrer only, the objection being waived unless it is so taken, and the demurrer must not only assign it as a cause, but must point out wherein the duplicity consists." 7 Encyclopoedia of Pleading & Practice, p. 243, § V; *Hoffman* v. *Louis L. Battey Post, etc., American Legion,* 74 *Ga. App.* 403, 415 (39 S. E. 2d, 889); *Carusos* v. *Briarcliff Inc.,* 76 .*Ga. App.* 346, 353 (45 S. E. 2d, 802). Ground (a) of the defendant's objection to the amendment fails to point out wherein the amendment would make the petition duplicitous and the trial court did not err in overruling this ground.

■ While we recognize that there. is a distinction between ordinary negligence and gross negligence, and also recognize that a cause of action for ordinary. negligence is one thing and a cause of action for wilful and wanton misconduct (sometimes inaptly. denominated wilful·negligence) is entirely another, a petition wherein certain acts of negligence are described as ordinary negligence and as gross negligence does not contain two different causes of action. The court did not, therefore, err in overruling ground (b) of the objection to the amendment which complained that the amendment added a new cause of action by denominat-

ing the acts of negligence enumerated in the original petition as gross negligence.

■ Objection is made to allowing the following testimony of the witness Dr. Ward over the objection that it called for a conclusion and opinion of the witness: "In my opinion the pilot of a plane flying 500 feet and circling Fitzgerald three times and making a circle three miles in circumference on a clear afternoon should be able to see the regular landing field." The witness testified that he was a flight surgeon during World War II and in that capacity had had considerable experience with flying as a passenger. He also testified that he had examined the flying field in question from the ground, but had not flown over it. Negligence was alleged on the part of the defendant in failing to land the plane at a safe place, and one of the issues before the jury was whether the defendant ought to have been able to locate the airfield in Fitzgerald under existing conditions. Under these circumstances generally, a non-expert witness may testify as to his opinion when he states the facts upon which it is based, the effect of this evidence being for the jury. See *Harris* v. *State,* 191 *Ga.* 243 (9) (12 S. E. 2d, 64); *Atlantic Mutual Fire Ins. Co.* v. *Pruitt,* 62 *Ga. App.* 466, 483 (8 S. E. 2d, 427). Other witnesses testified without objection that the flying field was clearly visible from the air. The court resolved the doubt concerning the admissibility of this evidence in favor of the admission thereof, which is also the general rule. *Purser* v. *McNair,* 153 *Ga.* 405 (2) (112 S. E. 648). In view of other evidence on the same subject, it was in any event not harmful error. *Shingler* v. *Bailey,* 135 *Ga.* 666 (5) (70 S. E. 563) does not hold contrary to this ruling, for the question there, as to whether a person walking over lots of land where trees had been turpentined would be able to "see that possession had been taken of it" called for a conclusion of law as to whether the turpentining of trees amounted to possession of land.

■ The second special ground assigns error on the ruling requiring the defendant to reply on cross-examination to the query as to whether he did not consider the airport a safer place to land than the road. In view of the right to thorough and sifting cross-examination under Code § 38-1705 this was not error, for the questions on cross-examination, including this one,

might reasonably be designed to test the intelligence, memory, accuracy, veracity and judgment of the defendant. See *Harris v. Central R.*, 78 *Ga.* 525 (3) (3 S. E. 355).

Error is assigned in the third special ground on the defendant's answer to a question propounded on cross-examination, which answer, assigned as error, is as follows: "I tried to get Dr. Ward to sign a certificate to the effect that I was not under the influence of alcohol at the time of this wreck. . . He said he would but he would stipulate that it was on my breath. I decided that I didn't want it that way." It is contended that this testimony was not relevant or material and was introduced merely for its prejudicial effect.

It is significant that the objection was not to the question but to the testimony of the defendant in response thereto. One of the issues in the case was whether or not the defendant was under the influence of an intoxicant. The testimony of the defendant thus elicited by cross-examination might have paved the way for other testimony tending to impeach him. It related to a material issue in the case. It was held in *Torbert v. Cherokee Ins. Co.*, 141 *Ga.* 773 (3) (82 S. E. 134) that testimony concerning an interview between the defendant and a witness should have been admitted if the defendant was sought to be impeached on the ground that he was seeking to induce the witness to swear falsely, but its rejection was not error if he were merely seeking to obtain truthful evidence. In that case the court was unable to decide the purpose of the question. The question here is not set out, and, in view of the right to a thorough cross-examination above referred to, the case will not be reversed on this ground. In any event the ruling was not harmful, since the doctor testified he did not consider the defendant under the influence of liquor but that the odor was on his breath. Error in the admission of evidence is rendered harmless when similar uncontroverted evidence is admitted without objection. *Sikes v. Wilson*, 74 *Ga. App.* 415 (2) (39 S. E. 2d, 902). These grounds are without merit.

■ Error is assigned in the fourth special ground on the exclusion of testimony by a witness for the defendant that he had on another occasion seen another take off and land from the same roadway, using the road as an air strip. It does not

appear that the airplane concerning which the testimony was offered was the same type of plane, or that the conditions as to daylight, weather, and so on were at all similar. Where it is desired to use one thing, act or transaction in comparison with another to illustrate some condition, such as, in this case, safety, it is necessary that such conditions be substantially similar. See *Dunn* v. *Beck*, 144 *Ga.* 148 (86 S. E. 385); *Atlanta Ice & Coal Co.* v. *Mixon*, 126 *Ga.* 457 (55 S. E. 237). In the absence of a showing that the conditions were so similar as to carry probative weight, the court did not err in applying the general rule that evidence as to other transactions at different times and concerning different parties is irrelevant to the issues being tried.

■ The charge requested in ground 6 to the effect that a guest, upon discovering negligence on the part of the pilot of the plane, would be under a duty to warn him thereof, was not correctly adapted to the facts of the case, since it is a question for the jury to determine whether or not, under the circumstances as they existed at the time, the duty to warn the driver devolves upon his guest in the exercise of the duty of self preservation. *Hawkins* v. *Benton Rapid Express*, 82 *Ga. App.* 819 (3b) (62 S. E. 2d, 612). The question is one of fact for the jury rather than one of law for the court as to what negligence on the part of the driver, when discovered by the guest, would create on the part of the latter a duty to warn the driver. See also *McCord* v. *Benford*, 48 *Ga. App.* 738, 739 (3) (173 S. E. 208). This ruling also applies to special grounds 8 and 9, in which requests to charge to substantially the same effect were also refused.

■ Complaint is made in the seventh special ground that the court refused to charge on request that there was insufficient evidence in the record to warrant a finding that the defendant was under the influence of intoxicants at the time of the crash. Special grounds 14, 15 and 20 complain of the following charge: "Now, gentlemen, the written contentions of the plaintiff, Mrs. Webb, are set forth in her petition and amendment thereto, and likewise the written contentions of the defendant, Mr. Sammons, are set forth in his answer. These papers, the plaintiff's petition and amendment thereto, and the defendant's answer, will be out with you. While they are not evidence, in that they have

no probative value, they may and should be referred to by you for the contentions of the respective parties," alleging error in that it submitted to the jury the issue of the defendant's intoxication when no evidence in the record justified this; in that it misled the jury into conceiving that they might return a verdict for the plaintiff under a finding of ordinary negligence (contained in an allegation of the petition *before* amendment) and in that one of the allegations of negligence (allowing the decedent to become a passenger of the plane while under the influence of intoxicants) failed because no causal relation existed between such alleged act and the resultant death of the plaintiff's husband. As to intoxication, there was evidence from which the jury might have found that the defendant had drunk four ounces of whisky approximately three hours before the flight; that there was whisky in the luggage which was taken aboard; that after the crash the defendant's breath smelled of whisky, and that he "looked wild". Consequently, the court did not err in failing to remove this issue from the consideration of the jury. The charge on the contentions of the parties was correctly phrased, and, as stated in *Barbre* v. *Scott*, 75 *Ga. App.* 524, 534 (43 S. E. 2d, 760): "It is well-settled law that, in charging the jury, it is not error merely to state correctly the contentions made by the allegations of the petition even though some of the contentions may not be supported by the evidence." See also *Central Truckaway, &c.* v. *Harrigan*, 79 *Ga. App.* 117 (53 S. E. 2d, 186). The court further charged that "in order for the plaintiff to recover, she must prove by a preponderance of the evidence that the defendant was guilty of negligence in at least one of the particular specifications set forth in her petition and the amendment thereto, that such negligence amounted to gross negligence, and was the proximate cause of the injuries resulting in the death of the plaintiff's husband." He further charged that, before the plaintiff would be entitled to recover, she must show that the negligence charged amounted to gross negligence, which he then defined. Accordingly, the charge as to the contentions of the parties was correct, and so qualified as not to mislead the jury. Also, for the reasons herein stated, the refusal of the trial court to charge the request was not error.

■ Special grounds 10, 11, 12 and 13 deal with the failure to charge in substance, both on request and without request, that a tort cannot be committed against a person consenting thereto; that if the decedent consented to the attempt to land the airplane under the circumstances existing at that time he could not recover; that this principle of law applies to a drunk man as well as to one who is sober, and that, if the circumstances were such that a sober man could not have recovered because of his contributory negligence, an intoxicated person would likewise be precluded therefrom. While drunkenness does not excuse a passenger or guest from the duty to exercise ordinary care for his own safety (*Powell* v. *Berry*, 145 *Ga.* 696, 700, 89 S. E. 753) it does not follow that under all circumstances the degree of care to be exercised will be the same.

The evidence discloses that the decedent had done very little flying himself, that what he had done was under the tutelage of the defendant, and that all he knew about flying aircraft had been passed on to him by the defendant. Under these circumstances the decedent might have justifiably relied upon the pilot's judgment rather than on his own. It follows, therefore, that the mere consent of the decedent to the defendant's action in landing on the road—which the defendant himself strongly contends was not negligence at all, but at most a mere error in judgment—would not be a bar to the plaintiff's recovery, and therefore the refusal to charge this principle of law in the form requested was not error.

■ A charge that, in order for the plaintiff to recover, she must prove by a preponderance of evidence that the defendant was guilty of negligence in at least one of the particular specifications of negligence set forth in her petition and amendment, is a correct statement of the law, and is not error for any reason assigned. *Southern Railway Co.* v. *Bullock*, 42 *Ga. App.* 495 (3) (156 S. E. 456). This is not in conflict with the holding in *Central of Georgia Ry. Co.* v. *Keating*, 177 *Ga.* 345 (4) (170 S. E. 493) since that case was reversed for error in overruling a demurrer to one of the allegations of negligence on the ground that such allegation created no liability on the part of the defendant, and the court further held that the charge that the plaintiff could recover on any one of the allegations of negligence

would have authorized a recovery on the allegation which should have been stricken on demurrer.

■ Special ground 5 is expressly abandoned. Special grounds 16, 17, 18 and 19 are incomplete in that they either make examination of the record as a whole necessary to their complete understanding, or fail to point out wherein the failures to charge without request on the subjects specified were erroneous or harmful to the movant. See *Powell* v. *State,* 25 *Ga. App.* 329 (3) (103 S. E. 174); *Henley* v. *Brockman,* 124 *Ga.* 1059 (4) (53 S. E. 672). These grounds are therefore not before this court for consideration.

■ (a) Code § 11-107 provides as follows: "The liability of the operator of an aircraft carrying passengers, for injury to or death of such passengers, shall be determined by the rules of law applicable to torts on land arising out of similar relationships." It is well established in this State that the duty owed a guest passenger riding· by invitation in another's automobile is that of slight care; and the absence of such care is termed gross negligence. Code, § 105-203; *Hennon* v. *Hardin,* 78 *Ga. App.* 81 (50 S. E. 2d, 236) and cases cited. It follows, therefore, that the liability of the operator of an aircraft carrying passengers by invitation and gratuitously is that of slight care.

■ One of the grounds of negligence which is alleged in the petition of the plaintiff to be the proximate cause of the death of her husband is in substance that the operator of said plane, the defendant, was grossly negligent in landing or attempting to land the plane on the road described in the petition, when he knew or, in the exercise of slight care and diligence, should have known that said road was an unsafe place to land the plane. The evidence is undisputed that at dusk on the afternoon of July 23, 1950, the defendant was operating his plane from Fort Valley to Fitzgerald; that the plaintiff's husband was riding with him as a guest; that the defendant was unable to locate the airfield at Fitzgerald and crashed the plane in an effort to land in a roadway some three or four miles west of Fitzgerald; that at the place where he attempted to land there were poles supporting REA electric power lines along the road; that the plane in attempting to land struck a guy wire which resulted in its crash and the death of the plaintiff's husband.

The defendant testified as follows: "When I attempted to make my landing, I saw poles at the side of this road. I saw them before I started down. I was, I would say, approximately three miles from Fitzgerald when I made this landing. West of town, if that road runs west from Fitzgerald. I understand it is about two or three miles from the airport, I don't know. There wasn't any reason to make my landing out there. The plane was running all right. I had plenty of gasoline. I could have stayed in the air approximately two hours, I said, or an hour and a half. . . Mr. Webb did not have anything to do with the operation of the plane. He did not try to interfere with my operating the plane at all. At that time he didn't try to pilot the plane; not while I was trying to land. He made no effort to interfere with my driving the plane since I left Fort Valley. . . I knew that my plane was wide enough that when I tried to land that plane on the road that if there was a guy wire coming from that wire into the road to hold up this pole my plane was wide enough to hit it. The place that I picked out to land, with that guy wire there, was not wide enough for me to land the plane in. . . I knew that the highways had poles and wires on either side of the road. Landing a plane in the immediate proximity of electric wires is not the safest place to land. Landing a plane where a guy wire extends out on the road, landing on that road is not a safe place to land."

The evidence as to the time of the crash is fixed by the estimation of a number of witnesses as around 7:30 in the evening. However, G. C. Key, a witness for the defendant who lived on the road where the crash occurred at some point near it, testified in substance that the crash resulted in cutting off the electric power to his home; that he had an electric clock and that the suspension of the electric power caused the clock to stop at 7:40. There is no evidence as to whether the clock was on time or not. He further testified in substance, however, that it was "dusty dark" at the time of the crash. His testimony in this respect is supported by that of his son, Clyde Key. The defendant testified that he went over the area along the road prior to the crash to determine if there were any obstructions that would prevent his landing in the road. Mr. Key testified, however, in substance that he saw the plane a few moments before the crash

in the area of the school house near his home but he did not hear or see it fly up or down the road prior to the crash. He was eating supper at the time of the crash and had heard and seen it momentarily before as it passed his house. He also testified in substance that the guy wire was strung across the highway from the top of the power pole on the south side to another pole from four to five feet high on the north side. Clyde Key, a witness who testified for the defendant by deposition, lived with his father, the witness G. C. Key, and was in the immediate vicinity where the crash occurred in an automobile on his way home. He testified in substance that the crash occurred at ten minutes to eight, which was not black dark but was dusky dark; that he saw the plane as it proceeded down the highway to the crash but that he too did not see the plane "drag" the area before it attempted the landing. Clyde Key and Charles J. Farmer, both witnesses for the defendant and experienced aviators, testified that the roadway was a safe place to land, although Key also stated that under the circumstances he would have preferred to find an airfield which had a marker rather than attempt a landing. The jury, however, was not bound by the testimony of either witness as to these matters of opinion, the ultimate weight thereof being for their consideration, and they being authorized to accept or reject it in their discretion. *Alabama Great Southern R. Co.* v. *McKenzie*, 139 *Ga.* 410 (3) (77 S. E. 647).

Questions of negligence are for the jury except in clear, palpable and indisputable cases. *Johnson* v. *Wofford Oil Co.*, 42 *Ga. App.* 647 (157 S. E. 349); *Southern Ry. Co.* v. *Slaton*, 41 *Ga. App.* 759 (154 S. E. 718); *Central of Ga. Ry. Co.* v. *Leonard*, 49 *Ga. App.* 689 (176 S. E. 137); *Byrd* v. *Grace*, 43 *Ga. App.* 255 (158 S. E. 467). Where reasonable minds might disagree, whether the conduct charged constitutes negligence, or whether such conduct, if negligence, has been proved, is exclusively a jury question. *Jordan* v. *Lee*, 51 *Ga. App.* 99 (179 S. E. 739); *Georgia Power Co.* v. *Blum*, 80 *Ga. App.* 618 (2) (57 S. E. 2d, 18). It is also a jury question where reasonable minds might disagree as to whether the negligence charged is ordinary or gross, or so charged with reckless disregard of consequences as to amount to wanton misconduct. *Arrington*

v. *Trammel,* 83 *Ga. App.* 107 (62 S. E. 2d, 451). As Mr. Justice Bleckley stated in the case of *Vickers* v. *Atlanta & W. P. Ry. Co.,* 64 *Ga.* 307, 308: "Where there is any doubt [when a jury question is presented] another method is to be used—a method involving a sort of mental chemistry; and the chemists of the law are the jury. They are supposed to be able to examine every molecule of the evidence, and to feel every shock and tremor of its probative force."

While the evidence as to intoxication was very weak, there was sufficient evidence on this subject for submission to the jury, as was pointed out in division 8 hereof. Evidence that a person "seemed to be drinking" at 2:30 p.m. is admissible on the question of whether he was drunk at sundown. *Suggs* v. *State,* 9 *Ga. App.* 830 (3) (72 S. E. 287). Where liquor was smelled on a man's breath, but he did not stagger, and the question at issue was whether he threw a glass of water in anger or as a result of his drunken condition, the defendant denying he was under the influence of intoxicants and offering an explanation for his conduct, this also was a jury question. *Whatley* v. *State,* 51 *Ga. App.* 26 (179 S. E. 587). It was equally a jury question here as to whether the defendant's attempt to land the airplane in an unfamiliar road at dusk was the result of intoxication or, as contended by him, an error in judgment.

Here, the jury was authorized to find that the defendant, who is an airplane pilot capable of night flying, and who was flying a plane properly and adequately equipped for night flying, with sufficient fuel to go to an airfield suitable for making a night landing, elected to attempt to land the plane on a roadway near a power pole to which was affixed a guy wire. If he flew along the roadway as above outlined at dusk, at a time when he could not have seen the guy wire by the exercise of slight care, a finding to which effect was authorized by the evidence, or if he did not fly along the roadway prior to attempting his landing thereon at all, as the evidence of the two witnesses named Key authorizes, a jury question was presented as to whether his attempt to land under these circumstances, and thus gamble his life and that of the plaintiff's deceased husband against the presence of the guy wire, which he himself testified he knew would wreck the plane if it was there, amounted to gross negli-

gence. A question for the jury was therefore presented on the issue of whether the defendant was guilty of such gross negligence on the grounds hereinbefore specified as to authorize the plaintiff's recovery. .

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232) requiring that the whole court consider any case in which one of the judges of a division dissents, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C.J., Gardner, P.J., Felton and Worrill, JJ., concur. Carlisle, J., dissents.*

CARLISLE, J., dissenting. By the terms of Code § 11-107, it is provided: "The liability of the operator of an aircraft carrying passengers, for injury to or death of such passengers, shall be determined by the rules of law applicable to torts on land arising out of similar relationships."

It is well established in this State that the duty owed a guest passenger, riding by invitation and gratuitously, in another's automobile is that of slight care; and the absence of such care is termed gross negligence. Code, § 105-203. *Hennon v. Hardin,* 78 *Ga. App.* 81 (50 S. E. 2d, 236), and cases cited.

While the various acts of negligence alleged in the petition as amended are described as both ordinary negligence and gross negligence, the evidence adduced upon the trial shows without contradiction that the plaintiff's husband was a guest passenger in the airplane of the defendant; the case was tried upon the theory of the breach by the defendant of his duty to exercise slight care to avoid injury to the plaintiff's husband; and the court in its charge to the jury confined and restricted the issue to the question of whether the acts of negligence charged constituted gross negligence. Accordingly, this court will confine itself to that issue in determining the question of the sufficiency of the evidence to support the verdict.

Gross negligence and slight diligence are defined in our Code: "In general, slight diligence is that degree of care which every man of common sense, howsoever inattentive he may be, exercises under the same or similar circumstances . . The absence of such care is termed gross negligence." Code, § 105-203.

Questions of negligence and diligence, even of gross negligence

and slight diligence, are questions for the jury, which the court cannot determine as a matter of law except in plain, palpable, and indisputable cases. *Capers* v. *Martin*, 54 *Ga. App.* 555 (188 S. E. 465), and cases cited.

In an action for damages alleged to be the proximate result of several acts of negligence, if the plaintiff is to recover, it must be upon proof that one or more of the alleged acts of negligence was the proximate cause of the injuries sustained.

The negligence specified in the petition to be the proximate cause of the injuries to the plaintiff's husband is as follows: (1) operating the plane at such a low altitude as to make it unsafe to land the plane at the time and place at which it was landed; (2) the defendant's operation of the plane while under the influence of intoxicants; (3) the defendant's allowing the plaintiff's husband to become a passenger on the plane while he (the plaintiff's husband) was under the influence of intoxicants; (4) the defendant's landing or attempting to land on the road in question when he knew or in the exercise of ordinary care should have known that the road was an unsafe place to land the plane; (5) the defendant's failure to land the plane in a safe place with the use of the care and diligence required by law; and (6) the defendant's landing or attempting to land the plane at a place and in a manner that disregarded safety for the life of the plaintiff's husband who was a passenger in the plane. By amendment these acts of negligence were described as gross negligence and the case was tried upon the theory of gross negligence.

After close perusal of the evidence for proof of one or more of the acts of negligence charged in the petition, I nowhere find in the record evidence of any negligence which the jury could reasonably infer came within the statutory definition of *gross* negligence and which the jury could reasonably infer also was the proximate cause of the injuries sustained by the plaintiff's husband. True, it is uncontradicted, in fact admitted by the defendant, that he and the plaintiff's husband, at approximately 2:30 and 3:30 o'clock on the afternoon of the day of the plane crash, both took drinks of whisky of approximately one or two ounces each on the two occasions; and it is also true that there is evidence that at the time the defendant and the plaintiff's hus-

band took off on the fatal flight, between 6:30 and 6:45 o'clock, the plaintiff's husband was under the influence of the intoxicant and that, abstractly, the defendant was negligent in taking an intoxicated person aboard his plane. There is no evidence or circumstance, however, from which the jury would be authorized to infer that the intoxication of the plaintiff's husband in any way interfered with the defendant's operation of his plane or had any causal connection whatsoever with the crashing of the plane. There is no evidence either that the defendant was under the influence of the intoxicant at the time they took off on the flight. According to the only witness present at the take-off, the defendant's actions were normal in every respect and did not manifest those of a person under the influence of an intoxicant, and we know of no presumption that the consumption of from two ounces minimum to four ounces maximum of whisky will leave all persons under its influence some three hours later. The defendant's actions and preparations for the flight were in every respect normal. There is no evidence whatsoever that the defendant consumed any more whisky after he took off in the plane. While it is true that the defendant and the plaintiff's husband took whisky with them aboard the plane, the evidence is uncontradicted that the bottle of whisky was placed in the defendant's traveling bag, the bag was placed in the luggage compartment behind the seat of the plane, and in such location was not accessible to occupants of the plane while the plane was in flight. But, even if we assume that the jury might hypothesize, from the defendant's "looking like a wild man" and his excitation after the crash of the plane, that he was under the influence of the intoxicant and therefore under its influence just prior to the crash, the hypothesis that the defendant's agitation was the result of the shock of the plane's crashing and his knowledge of his friend's severe injury is equally reasonable. But again, even if we postulate that the defendant was under the influence of the intoxicant just prior to the crash of his plane, there is no evidence that he was under the influence to such an extent that the intoxication in any way affected his ability to pilot the plane or that the intoxication contributed to the wrecking of the plane. To say that it did so is but mere conjecture and surmise.

There is no evidence or circumstance from which the jury

could infer that the defendant's operation of the airplane at a low altitude made it unsafe to land the plane at the time and place at which he attempted to land it; rather it bespoke the defendant's caution to descend to examine the proposed landing site.

Coming next to the questions of the proof that the road on which the defendant attempted to land his plane was an unsafe place at the time and that he was negligent in not attempting to land in a safe place and that these acts of omission and commission constituted gross negligence, we think that the most that can be said on this score, under the facts of this case, is that the defendant was guilty of an error in judgment. While it is true that there was evidence that the defendant's plane was equipped with lights and radio which would enable *a pilot* to fly it by night and to make night landings, and there was evidence that the defendant's gas supply was sufficient for him to have flown to an airport at which night landings could be safely made, I think that to have required the defendant to give up his trip to Fitzgerald and either to return to Fort Valley whence he came or to proceed some hundred miles further to an airport which was safe for night landings would have been requiring the defendant to exercise a great deal more than slight care. It is uncontradicted that the defendant could not find the airport at Fitzgerald; the road was straight for ten miles; the plane was thirty-three feet wide, from wing tip to wing tip; the road was from forty to forty-four feet wide, the fields of the environs were grown up in crops or grass and weeds; while the road was lined on one side with poles carrying telephone and electric wires and the defendant knew that such poles are frequently held in place by guy wires, he examined the situs of his proposed landing but found no such obstructions; and although it was "dusk dark" I think that if the defendant was negligent in attempting to land his plane under these circumstances, it certainly was not such negligence as could be characterized as gross. The crash was caused by the defendant's failure to discover the guy wire and flying his plane into it, and the burden of proving gross negligence can not be carried by a mere inference or presumption of negligence. See generally in this connection *Minkovitz* v. *Fine*, 67 *Ga. App.* 176 (19 S. E. 2d, 561), and cases there cited.

To recapitulate, the defendant *was not charged* with gross negligence in taking off to Fitzgerald without knowing where the landing field there was; he was not charged with gross negligence in taking off at a time of day such that if he did not find the landing field he would be forced to land elsewhere on the approach of darkness; he was not charged with knowledge of the presence of the wire which caused the wreck of his plane— at most he was charged with the knowledge of the likelihood of its presence, and his uncontradicted evidence was that he examined the roadway for the presence of such wires and did not see the fatal wire—he is not charged with having seen the wire and having been grossly negligent in landing there in spite of its presence; it was not shown that the defendant was intoxicated, or if intoxicated that intoxication contributed to causing the wreck of the plane; it was not shown that the defendant knew that the situs of the proposed landing was dangerous *until after the wreck,* and while he testified, as pointed out in the majority opinion, that he knew the place at which he attempted to land was unsafe, he qualified this statement by showing that this bit of information came to him by virtue of the wreck—of course he knew it was dangerous after he had wrecked his plane there; it was not shown that his return to Fort Valley to land would have been any safer, for by the time he reached there it would have been completely dark and the landing field there was not lighted at night; it was not shown that it would have been any safer to proceed to Valdosta, where the field was lighted, as the defendant testified that he had never landed the plane at night. In short, it seems to me, that for an error in judgment the jury has been permitted to find the defendant grossly negligent by an application of the doctrine of *res ipsa loquitur,* which I am sure my colleagues readily agree is not applicable where the cause of the wreck has been shown. I therefore dissent from that part of the decision contained in division 12, and from the judgment of affirmance.